48 F.3d 1153
 75 A.F.T.R.2d 95-1585, 63 USLW 2625,
95-1 USTC P 50,200,
33 Collier Bankr.Cas.2d 424
 In re: Bernice Elizabeth HAAS; Thomas Milton Haas, Debtors.
Thomas Milton HAAS; Bernice Elizabeth Haas, Plaintiffs-Appellants,
v.
INTERNAL REVENUE SERVICE; United States Small Business
Administration; Secor Bank, Defendants-Appellees.
 No. 93-6820.
 United States Court of Appeals,
Eleventh Circuit.
 March 30, 1995.
 
 Lawrence B. Voit, Silver & Voit, Thomas G.F. Landry, Mobile, AL, for appellants.
 Gary R. Allen, Chief, Edward T. Perelmuter, Loretta C. Argrett, Billie L. Crowe, William Estabrook, Appellate Section, Tax Div., Dept. of Justice, Washington, DC, for appellees.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before EDMONDSON and BIRCH, Circuit Judges, and HILL, Senior Circuit Judge.
 BIRCH, Circuit Judge:
 
 
 1
 In this case, we decide whether a debtor "willfully attempt[s] in any manner to evade or defeat [a] tax," for the purposes of 11 U.S.C. Sec. 523(a)(1)(C), when the debtor intentionally fails to pay taxes for which he or she properly filed tax returns and acknowledged were owed to the Internal Revenue Service ("IRS"). The district court determined that such conduct was tax evasion; consequently, it ruled that such taxes are nondischargeable in bankruptcy. We conclude that Congress did not intend such a result; accordingly, we REVERSE.
 
 I. BACKGROUND
 
 2
 Between 1977 and 1985, debtor-appellant Thomas Haas did not pay his income or employment taxes. Although Haas accurately filed his tax returns for the years at issue, he used his income to pay his personal and business debts rather than his tax liability. In 1987, Haas pled guilty for willful failure to pay his income taxes for 1980 to 1982 and his employment taxes for the first three quarters of 1984. Haas received a one-year suspended prison term and five years of probation. One condition of Haas's probation was that he had to remain current in his estimated tax payments and to make monthly payments to be applied to his tax liabilities. Haas substantially complied with the terms of his restitution order.
 
 
 3
 In 1991, Haas and his wife filed a joint Chapter 11 bankruptcy petition.[1] The government responded by filing a proof of claim for $705,044.25 in unpaid joint income taxes and unpaid employment taxes since 1977. Shortly thereafter, Haas filed an adversary proceeding seeking, inter alia, a determination of the dischargeability of his federal tax liabilities for taxable years ranging from 1977 to 1987. Although the general rule is that Chapter 11 debtors in bankruptcy may discharge "any debt" arising before the confirmation of a debtor's bankruptcy plan, 11 U.S.C. Sec. 1141(d)(1), Congress has excepted certain liabilities from discharge. In particular, a debtor may not discharge any tax liability "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. Sec. 523(a)(1)(C); see also 11 U.S.C. Sec. 1141(d)(2).
 
 
 4
 The bankruptcy court found that Haas's tax liabilities for the periods at issue were dischargeable. It held that section 523(a)(1)(C) applied only to the assessment of tax liability and not to the payment thereof. Because Haas did not submit any materially false or misleading tax returns, the court concluded that Haas's failure to pay his taxes did not constitute an attempt to evade or defeat his taxes under section 523(a)(1)(C).
 
 
 5
 The government appealed to the district court, which vacated the bankruptcy court's decision on the issue and remanded the case for a determination of whether Haas's failure to pay was willful. On remand, the bankruptcy court found that Haas made no affirmative attempt to evade or defeat his taxes; rather, Haas used his income to pay debts other than his tax liability.[2] The court again concluded that Haas's tax liabilities did not fall within section 523(a)(1)(C)'s exception to discharge.
 
 
 6
 The government appealed the bankruptcy court's decision, and the district court reversed. Applying the civil standard for "willful" conduct applicable under the Internal Revenue Code ("I.R.C."), I.R.C. Sec. 6672, the court reasoned that
 
 
 7
 the most persuasive interpretation of the statutory language at issue is to construe the phrase "willfully attempted in any manner to evade or defeat" to mean: (1) the debtor has a duty under the law, (2) the debtor knew he or she had that duty, and (3) the debtor voluntarily and intentionally violated that duty....
 
 
 8
 ... [W]here the debtor is financially able to pay the taxes due, but chooses not to do so, the government has met its burden of proof.
 
 
 9
 In re Haas, 173 B.R. 756, 758-59 (S.D.Ala.1993). The district court noted that Haas chose not to pay his taxes "and instead used his financial resources for other purposes," in spite of having both an awareness of his duty and the ability to pay. Id. at 759. According to the district court, Haas therefore willfully attempted to evade his taxes, thus rendering his tax liabilities nondischargeable in bankruptcy.
 
 II. DISCUSSION
 
 10
 The sole question at issue in this case is whether a debtor's failure to pay his taxes, without more, constitutes a "willful[ ] attempt[ ] in any manner to evade or defeat such tax" under section 523(a)(1)(C). The proper construction of the Bankruptcy Code, whether by the bankruptcy court or by the district court, is a matter of law; accordingly, we subject such interpretations to de novo review. In re Colortex Industries, Inc., 19 F.3d 1371, 1374 (11th Cir.1994); In re Taylor, 3 F.3d 1512, 1514 (11th Cir.1993).
 
 A. Plain Language Interpretation
 
 11
 Generally, the plain meaning of a statute controls, "except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (alteration in original) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). In the present case, the government maintains that the plain meaning of the phrase "willfully attempted in any manner to evade or defeat such tax," Sec. 523(a)(1)(C) (emphasis added), is sufficiently broad to include a debtor's "voluntary, conscious, and intentional" failure to pay taxes, Appellee's Brief at 16. See In re Toti, 24 F.3d 806, 809 (6th Cir.) (holding that a debtor's voluntary, conscious, and intentional failure to file income tax returns and to pay his taxes fell within plain meaning of section 523(a)(1)(C)'s exception to discharge), cert. denied, --- U.S. ----, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994). The government argues that if a debtor had both an awareness of his duty to pay his taxes and the present ability to pay them but nonetheless failed to satisfy that duty, then the tax liability is nondischargeable under section 523(a)(1)(C).
 
 
 12
 The difficulty with the government's "plain meaning" interpretation of section 523(a)(1)(C) is that it effectively would make all tax debts nondischargeable. If every knowing failure to pay taxes constituted an evasion of taxes under section 523(a)(1)(C), then discharge of tax liability would be available only to those very few debtors who discovered their debts to the IRS in the course of their bankruptcy proceedings.[3] Moreover, every debtor, at least in theory, has the present ability to pay his income or employment taxes; if a debtor did not have positive net income, then he would not have been assessed income or employment taxes in the first instance. The government's reading of section 523(a)(1)(C) would allow an exception to swallow the general rule of discharge for tax liabilities.
 
 
 13
 Such an expansive reading of section 523(a)(1)(C)'s exception to discharge would contravene the Bankruptcy Code's purpose of allowing a fresh start for the honest but unfortunate debtor. See Grogan v. Garner, 498 U.S. 279, 285, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); In re Miller, 39 F.3d 301, 304 (11th Cir.1994). Under the IRS's interpretation of section 523(a)(1)(C), the only honest debtor would be a debtor who is wholly unaware of her debt to the IRS. However, she also is an honest debtor who, fully cognizant of the debt that she owes to the IRS, uses her income to pay other debts instead. Her failure to pay the IRS is the result of not dishonesty but of the defining characteristic of all debtors--honest and dishonest, alike--insufficient resources to honor all of her obligations. Similarly, Haas technically had the financial ability to pay his taxes, but he still lacked the resources to pay all of his debts. That he decided to use his limited funds to satisfy obligations other than his properly acknowledged income taxes does not render him a dishonest debtor, simply a debtor.[4] A literal application of the government's "plain language" interpretation of section 523(a)(1)(C) would thus render the general rule of dischargeability of tax liabilities an empty letter and defeat the central purpose of the Bankruptcy Code. Consequently, we must look to other sources to guide our interpretation of the ambiguous provision.
 
 
 14
 B. Analogous Internal Revenue Code Provisions
 
 
 15
 Haas argues that, had Congress intended that the failure to pay, without more, would except tax liabilities from discharge, it could have written such a provision into section 523(a)(1)(C). In fact, using language almost identical to that found in section 523(a)(1)(C), Congress has on four other occasions previous to the enactment of section 523(a)(1)(C) shown itself capable of distinguishing between evasion of a tax and evasion of the payment of a tax. See I.R.C. Sec. 6531(2) (establishing periods of limitation on criminal prosecutions for various offenses arising under the I.R.C., including "the offense of willfully attempting in any manner to evade or defeat any tax or the payment thereof ") (emphasis added)); I.R.C. Sec. 6653 (imposing a penalty upon any person who "willfully attempts in any manner to evade or defeat any such [stamp] tax or the payment thereof " (emphasis added)); I.R.C. Sec. 6672 (imposing a civil penalty upon any person who "willfully attempts in any manner to evade or defeat any such tax or the payment thereof " (emphasis added)); I.R.C. Sec. 7201 (providing that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall ... be guilty of a felony" and subject to a maximum fine of $100,000, a maximum prison term of five years, or both (emphasis added)).
 
 
 16
 Where Congress knows how to say something but chooses not to, its silence is controlling. BFP v. Resolution Trust Corp., --- U.S. ----, ----, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994) (" '[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another,' and that presumption is even stronger when the omission entails the replacement of standard legal terminology with a neologism.") (citation omitted) (quoting Chicago v. Environmental Defense Fund, 511 U.S. ----, ----, 114 S.Ct. 1588, 1593, 128 L.Ed.2d 302 (1994)); United States v. Jordan, 15 F.2d 622, 628 (11th Cir.1990) (" ' "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." ' " (quoting Rodriguez v. United States, 480 U.S. 522, 525, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987) (per curiam))), cert. denied, 499 U.S. 979, 111 S.Ct. 1629, 113 L.Ed.2d 725 (1991). Cf. Andrus v. Glover Constr. Co., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."). We note, however, that in this case, the similar sections in the I.R.C. and section 523(a)(1)(C) are neither part of the same title, nor the same statute. Nevertheless, omissions or inclusions in the former are relevant to our construction of the latter because Congress is presumed to be aware of pertinent, existing law when it passes legislation. Miles v. Apex Marine Corp., 498 U.S. 19, 30, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990); Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 184-85, 108 S.Ct. 1704, 1712, 100 L.Ed.2d 158 (1988). This presumption is particularly strong in the case of I.R.C. Sec. 7201. Section 7201 is not an obscure provision; it is the principal enforcement provision of the I.R.C., " 'the capstone of a system of sanctions which singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law and to provide a penalty suitable to every degree of delinquency.' " Sansone v. United States, 380 U.S. 343, 350-51, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965) (quoting Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943)). As such, section 7201 was certainly pertinent to any bankruptcy provision intended to delineate which unpaid taxes would be dischargeable in bankruptcy and which would remain with the debtor.[5]
 
 
 17
 Therefore, we must presume that Congress was aware of both the language and the judicial interpretation of section 7201 when it drafted section 523(a)(1)(C). Jordan, 915 F.2d at 628 ("Under accepted rules of statutory construction, it is generally presumed that Congress, in drafting legislation, is aware of well-established judicial construction of other pertinent existing statutes."). Moreover, that the language of section 523(a)(1)(C) is nearly identical to that used in section 7201 indicates that Congress was not only constructively but also actually aware of its I.R.C. precedents when it drafted the bankruptcy provision.
 
 
 18
 In determining the scope of section 7201, the Supreme Court has recognized that the statute "includes the offense of willfully attempting to evade or defeat the assessment of a tax as well as the offense of willfully attempting to evade or defeat the payment of a tax." Sansone, 380 U.S. at 354, 85 S.Ct. at 1011. Whereas section 7201 penalizes a taxpayer who either "willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof," section 523(a)(1)(C) excepts from discharge only those taxes with respect to which the debtor "willfully attempted in any manner to evade or defeat such tax." The omission of the words "or the payment thereof" from section 523(a)(1)(C), in light of Congress's previous inclusion of these words on four previous occasions, indicates that Congress did not intend that a failure to pay taxes, without more, should result in the nondischargeability of a debtor's tax liabilities in bankruptcy. In re Gathwright, 102 B.R. 211, 213 (Bankr.D.Or.1989) (comparing section 523(a)(1)(C) to 26 U.S.C. Sec. 7201 and concluding that failure to pay taxes does not constitute a willful attempt to evade or defeat a tax under section 523(a)(1)(C)).C. Legislative History
 
 
 19
 The legislative history of section 523(a)(1)(C) supports this narrower reading of the statute.[6] Prior to 1966, taxes were not dischargeable in bankruptcy. See Bankruptcy Act of 1898, ch. 541, Sec. 17a(1), 30 Stat. 544, 550 (1898) (codified as amended at 11 U.S.C. Sec. 523(a)(1)(C)). In 1966, using language nearly identical to that found in the I.R.C., Congress first allowed debtors to discharge certain taxes. Excepted from discharge were any taxes "with respect to which the bankrupt ... willfully attempted in any manner to evade or defeat...." See Act of July 5, 1966, Pub.L. No. 89-496, 80 Stat. 270 (1966) (amending the Bankruptcy Act with respect to the priority and nondischargeability of taxes) (codified as amended at 11 U.S.C. Sec. 523(a)(1)(C)).
 
 
 20
 Congress adopted the current language of 523(a)(1)(C) in 1978. See Bankruptcy Act of 1978, Pub.L. No. 95-598, Sec. 523, 92 Stat. 2549, 2590 (1978). As reported by one of the bill's sponsors, the final wording of section 523(a)(1) represented a compromise between the original House bill and its Senate amendments. See 124 Cong.Rec. 32,398 (1978) (statement of Rep. Edwards). The House had proposed a version that was essentially unchanged from the 1966 amendment; the bill, H.R. 8200, would have excepted from discharge taxes "with respect to which the debtor ... willfully attempted in any manner to evade or defeat." 123 Cong.Rec. 35,655 (1977). The Senate version, however, proposed to narrow the exception of section 523(a)(1)(C) by striking the words "in any manner" and imposing a more stringent mens rea standard. Senate bill S. 2266 would have excepted from discharge those taxes "with respect to which the debtor ... fraudulently attempted to evade or defeat." Senate Comm. on the Judiciary, 85th Cong., 1st Sess., Comparison of H.R. 8200, as Reported, and S. 2266, as Introduced 106 (Comm. Print 1978), reprinted in Bankruptcy Reform Act of 1978: Hearings Before the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 95th Cong., 1st Sess. 3, 108 (1978) (red-lined text of H.R. 8200 omitted).
 
 
 21
 Although the current provision retains the willfulness standard and the broad phrase "in any manner" contained in H.R. 8200, it qualifies the exception by limiting it to attempts to evade or defeat "such tax." That Congress added the words "such tax" and not "such tax or payment thereof," as it had four times previously in the I.R.C., reflects congressional recognition that honest debtors may fail to pay their properly acknowledged taxes. We must give effect to Congress's decision to omit the words "or payment thereof" in section 523(a)(1)(C), where it has shown itself capable of including such language. See, e.g., NLRB v. Bildisco and Bildisco, 465 U.S. 513, 522-23, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482 (1984) (holding that the failure of Congress to draft an exclusion for certain collective bargaining agreements in 11 U.S.C. Sec. 365(a) indicates that the provision applies to all such agreements, in light of the previous use of such an exclusion by Congress in 11 U.S.C. Sec. 1167). Therefore, we hold that a debtor's failure to pay his taxes, alone, does not fall within the scope of section 523(a)(1)(C)'s exception to discharge in bankruptcy.
 
 D. Government Counterarguments
 
 22
 The government raises three principal challenges to this reading of section 523(a)(1)(C). First, it argues that the plain meaning of the words "in any manner" is broad enough to include a debtor's failure to pay a properly acknowledged tax. This view finds support in a number of bankruptcy court decisions. See, e.g., In re Griffith, 161 B.R. 727, 732-33 (Bankr.S.D.Fla.1993) ("[T]he modifying phrase ... 'in any manner,' is sufficiently broad to include willful attempts ... to evade taxes by concealing and transferring assets to protect them from execution or attachment."); In re Fridrich, 156 B.R. 41, 43 (D.Neb.1993) ("[T]he language 'in any manner' is sufficiently broad to include attempts by a debtor to evade the payment of taxes previously assessed...."); cf. In re Toti, 24 F.3d at 809 (holding that section 523(a)(1)(C) excepts both acts of commission and acts of omission, such as where debtor "voluntarily, consciously, and intentionally" failed to file tax returns or to pay taxes).
 
 
 23
 Congress, however, has consistently used the words "in any manner" and the words "or the payment thereof" in the same section, see Secs. 6531(2), 6653, 6672, and 7201; to adopt the government's interpretation of "in any manner" would render "or the payment thereof" superfluous in each of these four provisions. The better view is that the phrase "in any manner" in those sections may modify either attempts to evade or defeat a tax, or attempts to evade or defeat payment thereof, or both, but that its use does not erase the distinction between the assessment and the collection of taxes. Absent explicit language, therefore, the phrase "attempt[s] in any manner to evade or defeat such tax" does not imply attempts to evade or defeat payment thereof.
 
 
 24
 The government also challenges our narrower reading of "willfully attempted in any manner to evade or defeat such tax" by suggesting that such an interpretation renders the entire phrase superfluous. The government reasons that if one cannot evade or defeat a tax by refusing to pay a properly acknowledged tax, then the only possible way to evade or defeat a tax is by filing a false return. Because filing a false return is covered already in section 523(a)(1)(C), the government argues that Haas's reading of the provision violates the statutory canon that a provision should be interpreted such that every word is given meaningful effect. See In re Jones, 116 B.R. 810, 815 (Bankr.D.Kan.1990) (noting in dicta that "[i]f evading or defeating collection or payment of a tax does not count, this court is hard-pressed to conceive how a debtor might willfully attempt to evade or defeat a tax without also filing a fraudulent return").
 
 
 25
 We do not find this argument persuasive. Congress has demonstrated that language prohibiting fraudulent returns is not redundant with language proscribing attempts in any way to evade or defeat the assessment of a tax. As already noted, section 7201 makes it a felony for any person to "willfully attempt[ ] in any manner to evade or defeat any tax imposed by this title or the payment thereof." Sec. 7201. At the same time as it enacted section 7201, Congress also enacted I.R.C. Sec. 7207, which makes it a misdemeanor for any person to "willfully deliver[ ] or disclose[ ] to the Secretary any ... return ... known by him to be fraudulent or to be false as to any material matter." Sec. 7207. Since Congress purposely devoted separate sections of the I.R.C. to penalize evasion of a tax or payment thereof and to penalize filing a fraudulent return, it clearly did not consider the scope or effect of these two provisions to be identical.[7] Mindful of the different judicial interpretations of sections 7201 and 7207, Congress evidently chose to proscribe only selected elements of the conduct described in each provision when drafting section 523(a)(1)(C).
 
 
 26
 The government also argues that Haas's reading of section 523(a)(1)(C) defeats the statute's purpose of preventing the use of the Bankruptcy Code as a tax evasion device. Congress was well aware of the potential for tax evasion when it debated the Bankruptcy Reform Act of 1978:
 
 
 27
 In business cases ... it is a frequent occurrence that the business will stop paying its taxes before it stops paying its other creditors, because the officers of the business know that detection of nonpayment is more difficult for the taxing authority than it is for a supplier or lender, and that an unpaid supplier quickly stops shipping goods, though an unpaid taxing authority is usually unable to take collection action for months.
 
 
 28
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 193 (1977), reprinted in 1978 U.S.C.C.A.N., 5787, 6153-54. However, the provision Congress drafted to prevent this form of tax evasion was not section 523(a)(1)(C) but sections 523(a)(1)(A)[8] and 507(a)(8).[9] See. H.R.Rep. No. 595 at 190 & nn. 97, 98, 1978 U.S.C.C.A.N., at 6151 nn. 97, 98. Explaining the policy behind these provisions, Congress noted that
 
 
 29
 [b]ecause it takes a taxing authority time to locate and pursue delinquent tax debtors, taxes are made nondischargeable if they become legally due and owing within three years before bankruptcy. An open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due.
 
 
 30
 Id. at 190, 1978 U.S.C.C.A.N., at 6150 (footnote omitted) (emphasis added). Congress enacted section 523(a)(1)(A) and section 507(a)(8) to give taxing authorities time to pursue delinquent income tax debtors and to obtain secured status before the debtor can discharge his tax liability in bankruptcy. See id.
 
 
 31
 Congress did not intend to grant the IRS an absolute priority in bankruptcy for delinquent taxes, however. Instead, sections 507(a)(8) and 523(a)(1)(A) except from discharge income and employment tax liabilities only for those taxable years ending within three years of the filing of a debtor's bankruptcy petition. See Secs. 507(a)(8), 523(a)(1)(A). Congress imposed this three-year limit on the nondischargeability of income and employment taxes "because the taxing authority should not be given priority for taxes that are unassessed or uncollected through a lack of due diligence." H.R.Rep. No. 595, at 191, 1978 U.S.C.C.A.N., at 6151. The government's interpretation of section 523(a)(1)(C) effectively would eliminate the three-year time limit imposed by sections 523(a)(1)(A) and 507(a)(8)(A) and would give the IRS an open-ended priority for tax liabilities regardless of that agency's "lack of due diligence" in collecting properly reported tax liabilities. Thus, the government correctly notes that Congress intended to prevent businesses from paying their other creditors ahead of the IRS. The government is mistaken, however, when it seeks to remedy this situation by excepting from discharge the whole of Haas's tax liability, per section 523(a)(1)(C), rather than only that portion of Haas's tax debt attributable to the three taxable years preceding his bankruptcy petition, per section 523(a)(1)(A).[10]
 
 III. CONCLUSION
 
 32
 Haas challenges the district court's determination that his intentional failure to pay his taxes constitutes a "willful[ ] attempt[ ] in any manner to evade or defeat such tax" for the purposes of section 523(a)(1)(C). We conclude that Congress has shown itself capable of distinguishing between the evasion of a tax and the evasion of payment thereof; its decision to omit the words "or payment thereof" in section 523(a)(1)(C), despite the inclusion of these words in four previously enacted and nearly identical provisions of the I.R.C., must be given effect. Haas's tax liability does not fall within the scope of section 523(a)(1)(C) and, as such, is dischargeable in bankruptcy. We REVERSE.
 
 
 
 [1]
 Although Haas filed joint income tax returns with his wife during the years in question, the dischargeability of his wife's tax liability is not at issue here
 
 
 [2]
 The bankruptcy court found:
 Mr. Haas filed income tax returns for the years 1977 through 1985 but failed to pay the tax due in connection with the tax returns for 1977 through 1985. Mr. Haas did not engage in any conduct, either prior to or after the filing of the tax returns, evincing an illicit motive to defeat or evade the taxes due for 1977 through 1985. Mr. Haas readily acknowledged the tax liability and, other than his failure to pay the obligation, made no attempt to defeat or evade his obligation. The debtors did not conceal assets, engage in dubious transfers of assets, falsify or destroy books or records, or misstate the amount of income in the respective years at issue. Instead of satisfying the tax liability, Mr. Haas used his income to pay personal and business expenses rather than pay the taxes due. Mr. Haas was under financial pressure and his nonpayment of the taxes was not the result of willful conduct designed to defeat or evade the taxes; but, instead was the result of mistaking the priority and importance of certain financial obligations.
 R1-21 (Amended Memorandum Opinion) (emphasis added).
 
 
 [3]
 Indeed, in its oral argument the government did not recognize any extenuating circumstances which might allow a debtor to pay other obligations ahead of her acknowledged taxes without exempting those unpaid taxes from discharge
 
 
 [4]
 See In re Sonnenberg, 148 B.R. 35, 38 (Bankr.N.D.Ill.1992) (holding that IRS failed to show that debtors willfully attempted to evade payment of their taxes under section 523(a)(1)(C) despite the fact that debtors consistently filed their returns late and without payments while leading a lavish lifestyle). The court in Sonnenberg emphasized that poor financial management, not dishonesty, led to the debtors' failure to pay their taxes:
 In attempting to work through these difficulties, [debtors] acted with no particular intent to defeat any specific creditor, including the IRS. The Sonnenbergs' downward financial spiral, combined with the maintenance of a lifestyle inconsistent with their financial obligations, finally resulted in the bankruptcy petition which brings them before this Court.
 Id.
 
 
 [5]
 All of the I.R.C. provisions using language similar to that found in section 523(a)(1)(C) were originally enacted in 1954, prior to the 1966 amendment to the Bankruptcy Act. See Internal Revenue Code of 1954, Pub.L. No. 83-591, Secs. 6531, 6653, 6672, 7201, 68A Stat. 3, 815, 822-23, 828, 851 (1954). Congress added the relevant language to section 523(a)(1)(C) in 1966 and 1978, after the original versions of the above I.R.C. provisions were in place. See textual discussion, infra. Sections 6653 and 6672 have since been amended and continue to contain this particular language
 
 
 [6]
 Additionally, this narrow construction of section 523(a)(1)(C) is consistent with our general practice of construing statutory exceptions to discharge in favor of the debtor so as to give effect to the fresh start policy of the Bankruptcy Code. See In re Miller, 39 F.3d 301, 304 (11th Cir.1994)
 
 
 [7]
 The Supreme Court has distinguished section 7201 from section 7207 by noting that the government must prove the existence of a tax deficiency before it can convict a defendant under the former provision, but not under the latter. Sansone, 380 U.S. at 352, 85 S.Ct. at 1010 ("Conduct could therefore violate Sec. 7207 without violating Sec. 7201 where the false statement, though material, does not constitute an attempt to evade or defeat taxation because it does not have the requisite effect of reducing the stated tax liability."). But see In re Brackin, 148 B.R. 953, 956 (Bankr.N.D.Ala.1992) (holding that the IRS must prove underpayment of tax in order to prove fraud under section 523(a)(1)(C)); In re Kirk, 98 B.R. 51, 55 (Bankr.M.D.Fla.1989) (same). Although Kirk actually refers to fraud under section 523(a)(1)(A), the citation appears to be in error, as the case addresses fraud under section 523(a)(1)(C)
 
 
 [8]
 Section 523(a)(1)(A) excepts from discharge tax liabilities "of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed." Sec. 523(a)(1)(A)
 
 
 [9]
 House Report 595 refers to a proposed provision 11 U.S.C. Sec. 507(6)(A). See H.R.Rep. No. 595, at 190 n. 98, 1978 U.S.C.C.A.N., at 6151 n. 98. This material is currently codified at 11 U.S.C. Sec. 507(a)(8). Compare H.R. 8200, Sec. 507(6)(A), reprinted in 124 Cong.Rec. 32360 (1978), to Sec. 507(a)(8). Section 507(a)(8)(A) creates a priority in bankruptcy for income taxes
 (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
 (ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or
 (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case....
 Sec. 507(a)(8)(A). Section 507(a)(8)(D) creates a priority for employment taxes on wages earned within three years of the debtor's filing of a bankruptcy petition. See Sec. 507(a)(8)(D).
 
 
 [10]
 Haas does not contest the nondischargeability of his tax liabilities for the three years immediately preceding his filing a bankruptcy petition