In Re: W. David FRETZ, Debtor.

United States of America, Plaintiff-Appellant,

v.

W. David Fretz, Defendant-Appellee.

No. 00-13404.

United States Court of Appeals,

Eleventh Circuit.

March 23, 2001.

Appeal from the United States District Court for the Northern District of Alabama.(No. 99-01447-CV-J-NE), Inge P. Johnson, Judge.

Before EDMONDSON, CARNES and MARCUS, Circuit Judges.

CARNES, Circuit Judge:

This appeal brings us the issue of whether a debtor's intentional failure to file tax returns and to pay taxes owed to the Internal Revenue Service ("IRS") is sufficient, even without any supporting affirmative conduct, to show that he "willfully attempted in any manner to evade or defeat [a] tax," within the meaning of the non-discharge provision contained in 11 U.S.C. § 523(a)(1)(C), which is part of the Bankruptcy Code. We hold that it is.

## I. BACKGROUND

### A. FACTS[1]

From 1982 through 1992 William David Fretz failed to file federal income tax returns or to pay his taxes. His problems with alcoholism during that time period caused a severe downward spiral in his life. Notwithstanding that, Dr. Fretz managed to maintain his employment as a physician; indeed, he worked shifts of between twelve and twenty-four hours in hospital emergency rooms. Although he never drank within eight hours before a shift, upon completing work he would drink massive amounts of vodka until he passed out. Dr. Fretz eventually joined Alcoholics Anonymous, regained control of his life, and quit

---

[1]The historical facts we set out in this section of the opinion are pretty much undisputed. To the extent of any dispute, we have taken the version of the facts found by the bankruptcy court (after an evidentiary hearing) because those findings are not clearly erroneous.

drinking.  The exact day he stopped drinking was April 15, 1993.[2]

Before 1982, Dr. Fretz worked in a clinic and was paid as a salaried employee, and his employer withheld income taxes from his paychecks as it was required to do.  From 1982 through 1992, however, Dr. Fretz worked at several hospitals and clinics as an independent contractor.  Because he was no longer a salaried employee, no income taxes were withheld from his paychecks during that period.  The hospitals and clinics dutifully filed Forms 1099 reporting the payments they made to Dr. Fretz, but he did not dutifully do anything about his income tax responsibilities.  He did not make his required estimated tax payments in any of those years.  Not once.  And he did not file his annual returns or pay any income tax.  None. In 1986 Dr. Fretz did hire an accountant to prepare a tax return for him, but he never filed it.  On the other hand, Dr. Fretz never attempted to move his assets around or otherwise conceal them (except to the extent that failing to file returns conceals assets).

The day of reckoning Dr. Fretz always knew would come finally arrived in March of 1990 when he received a letter from the IRS stating that it had no record of receiving returns from him for 1982 through 1988.  One thing led to another and eventually to criminal charges.  In January of 1994, Dr. Fretz pleaded guilty to one criminal charge, which was willful failure to file a tax return for the 1988 taxable year, in violation of 26 U.S.C. § 7203.  In November of 1994, he signed returns prepared by the IRS for the 1982 through 1992 tax years.  Included in the penalties to which he consented were civil fraud penalties for 1982 through 1988, as authorized in 26 U.S.C. § 6653(b), and civil penalties for fraudulent failure to file for 1989 through 1992, as authorized in 26 U.S.C. § 6651(a) and (f).

The amount of Dr. Fretz' tax liability, including the calculation of the interest and penalties, is not the issue in this case.  The issue, instead, is whether his liability for those taxes, interest, and penalties is a debt that is dischargeable in bankruptcy.

## B. PROCEDURAL HISTORY

In June of 1997 Dr. Fretz filed a petition under Chapter 7 of the Bankruptcy Code. The next month he filed a complaint seeking to discharge his federal income tax liability for all tax years from 1982 through

---

[2]As the thoughtful reader might surmise, it was not merely coincidental that Dr. Fretz, who had not filed tax returns or paid income taxes for a decade, stopped drinking on April 15.  Dr. Fretz testified that he knew he would eventually be called to account for failing to pay his taxes, and that it weighed so heavily on him that he contemplated committing suicide.  As he explained about his decision to stop drinking on "tax day": "I picked the date so that I would be continuously reminded throughout my sobriety of the harm that I had done to myself during the drinking years and the pain that it had caused so that I would never ever be tempted to go back and drink again."

1992, except for 1988. The government filed not only an answer denying that Dr. Fretz was entitled to be discharged from liability for the tax years cited in his complaint, but it also filed a counterclaim asserting its position that his liability for the 1988 taxable year also was not dischargeable.[3] The total amount of taxes, interest, and penalties for which Dr. Fretz sought discharge exceeded $1 million at the time he filed his complaint. The government argued that Dr. Fretz' tax liabilities for 1982 through 1992 were nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C) because he had willfully attempted to evade or defeat those taxes within the meaning of that provision.[4]

The bankruptcy court held that the taxes for the years in issue were dischargeable. In its memorandum opinion the court ruled that the government had the burden of proving by a preponderance of the evidence that Dr. Fretz' failure to pay taxes was committed with fraudulent intent. Because of Dr. Fretz' alcoholism, the court believed that he had followed no "scheme or design" to evade his taxes. Ultimately, the court concluded "that Dr. Fretz' conduct did not contain sufficient aggravating circumstances to raise the late filing of returns and failure to pay to the level of willfulness that would make the debt at issue nondischargeable."

The government appealed to the district court, which affirmed the bankruptcy court. In its memorandum opinion the district court found the issue and facts in Dr. Fretz' case to be "virtually indistinguishable" from those of *In re Haas,* 48 F.3d 1153 (11th Cir.1995), *abrogated in part, In re Griffith,* 206 F.3d 1389, 1395-96 (11th Cir.2000) (en banc), where we held that a debtor who accurately filed his tax returns but intentionally failed to pay taxes did not fit within the exception to dischargeability provided in § 523(a)(1)(C). The district court held that because intent was the determinative factor and Dr. Fretz did not engage in any affirmative acts to avoid his taxes, there was no willful attempt to evade or defeat taxes within the meaning of § 523(a)(1)(C). The government appealed.

---

[3]In connection with his guilty plea for willfully failing to file a return for 1988, Dr. Fretz had made payments pursuant to an order of restitution. He thought that those restitution payments had been applied to his liability for the 1988 tax year, which is why he did not seek to have that liability discharged in the bankruptcy proceeding. Apparently, however, the IRS had applied those restitution payments to Dr. Fretz' liability for earlier tax years, which is why it counterclaimed about the 1988 tax year liability. Regardless of how it got into the pleadings, the dischargeability of the 1988 tax year liability is part of this case. The issues involving it are the same as those involving the other tax years.

[4]The government's counterclaim against Dr. Fretz also asserted that his federal income tax liability for the 1993 tax year is nondischargeable. Dr. Fretz conceded this issue in the bankruptcy court, apparently because he claimed a deduction that would eliminate his tax liability for that year, thereby making the dischargeability of it academic.

## II. DISCUSSION

We review the bankruptcy court's factual findings under the clearly erroneous standard. *General Trading Inc. v. Yale Materials Handling Corp.,* 119 F.3d 1485, 1494 (11th Cir.1997). By contrast, conclusions of law, whether from the bankruptcy court or the district court, we review *de novo. Id.*

A debtor under Chapter 7 of the Bankruptcy Code is generally granted a discharge from all debts that arose prior to the filing of the bankruptcy petition. 11 U.S.C. § 727(b). Nonetheless, this "fresh start" policy is only available to the "honest but unfortunate debtor." *Grogan v. Garner,* 498 U.S. 279, 286-87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). To ensure that, Congress provided several exceptions to the general rule of discharge. One of those exceptions, and the one at play in this case, is contained in § 523(a)(1)(C), which provides, in relevant part:

> (a) A discharge under § 727 ... of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax or a customs duty—
>
> * * *
>
> [3] (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax ...

11 U.S.C. § 523(a)(1)(C). As we have noted before, "[t]he Government bears the burden to prove, by a preponderance of the evidence, that a particular claim is nondischargeable under § 523(a)." *In re Griffith,* 206 F.3d 1389, 1396 (11th Cir.) (en banc) (citing *Grogan,* 498 U.S. at 287-88, 111 S.Ct. at 659-60), *cert. denied,* --- U.S. ----, 121 S.Ct. 73, 148 L.Ed.2d 37 (2000).

Dr. Fretz did not file tax returns for the years in question until November of 1994 when he signed returns that had been prepared by the IRS. So, we are not concerned with the first part of § 523(a)(1)(C), which is aimed at a debtor who has "made a fraudulent return," but only with the second part, which is aimed at one who has "willfully attempted in any manner to evade or defeat" his income taxes.

Exceptions to the general rule of discharge, such as § 523(a)(1)(C), are to be strictly construed in favor of the debtor. *Griffith,* 206 F.3d at 1394; *In re Fegeley,* 118 F.3d 979, 983 (3d Cir.1997); *Dalton v. I.R.S.,* 77 F.3d 1297, 1300 (10th Cir.1996). But that rule of strict construction does not permit or require that an unambiguous provision be construed contrary to the plain meaning of its terms. To the contrary, we are required to interpret straightforward, unambiguous language in the Bankruptcy Code, like that in all other statutes, according to its plain meaning. *See United States v. McLymont,* 45 F.3d 400, 401 (11th Cir.1995)

( "[T]he plain meaning of the statute controls unless the language is ambiguous or leads to absurd results.") (citation omitted); *see also In re American Steel Product, Inc.,* 197 F.3d 1354, 1356 (11th Cir.1999) ("It is well-settled that courts are required to apply the plain meaning canon of statutory construction in interpretation of the Bankruptcy Code."). When statutory language has not been expressly defined, we are to give that language its common meaning. *Consolidated Bank, N.A. v. United States Dep't of Treasury,* 118 F.3d 1461, 1464 (11th Cir.1997) ("In the absence of a statutory definition of a term, we look to the common usage of words for their meaning."). The plain language of the second prong of § 523(a)(1)(C) contains a conduct requirement (that the debtor "attempted in any manner to evade or defeat [a] tax"), and a mental state requirement (that the attempt was done "willfully"). *See Fegeley,* 118 F.3d at 983; *In re Birkenstock,* 87 F.3d 947, 951 (7th Cir.1996). We turn now to a closer look at those two requirements to see if the government carried its burden of establishing that the § 523(a)(1)(C) exception applies in this case.

## A. THE CONDUCT REQUIREMENT

We begin our closer look with the conduct requirement, remembering that "Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation." *Dalton,* 77 F.3d at 1301 (quoting *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943)); *see also Fegeley,* 118 F.3d at 983. Dr. Fretz argues that the outcome in this case is controlled by our decision in *In re Haas,* 48 F.3d 1153 (11th Cir.1995), *abrogated in part, In re Griffith,* 206 F.3d 1389, 1395-96 (11th Cir.2000) (en banc). In that case, we considered a debtor who had filed accurate returns but had not paid his taxes, and held that simply failing to pay taxes is not enough to satisfy § 523(a)(1)(C)'s conduct requirement. *Haas,* 48 F.3d at 1158 ("[A] debtor's failure to pay his taxes, alone, does not fall within the scope of section 523(a)(1)(C)'s exception to discharge in bankruptcy.").

We noted in *Haas* that a reading of § 523(a)(1)(C) in isolation, and especially the broad phrase "in any manner," might lead to the conclusion that simply failing to pay taxes was within the scope of the nondischargeability provision. *Id.* at 1155-56. But we also noted that other provisions contained in the Internal Revenue Code referred to "willfully attempting in any manner to evade or defeat any tax *or the payment thereof.*" *See id.* (quoting 26 U.S.C. § 6531(2)); *see also id.* (quoting nearly identical language contained in 26 U.S.C. §§ 6653, 6672, & 7201). Drawing from that comparison, we concluded:

> The omission of the words "or the payment thereof" from section 523(a)(1)(C), in light of Congress's previous inclusion of these words on four previous occasions, indicates that Congress did not intend

that a failure to pay taxes, without more, should result in the nondischargeability of a debtor's tax liabilities in bankruptcy.

*Id.* at 1157. Most of the other circuits that have examined this issue agree that a simple failure to pay taxes does not satisfy § 523(a)(1)(C)'s conduct requirement. *See Fegeley,* 118 F.3d at 983 (agreeing with *Haas* that nonpayment of taxes is not sufficient to satisfy the conduct requirement, but nonpayment is "relevant evidence which [we] should consider in the totality of conduct to determine whether or not the debtor willfully attempted to evade or defeat taxes") (citation and internal marks omitted, alteration in original); *Birkenstock,* 87 F.3d at 951 (same); *Dalton,* 77 F.3d at 1301 (same); *but see In re Bruner,* 55 F.3d 195, 200 (5th Cir.1995) (rejecting reasoning of *Haas* and holding that "[s]ection 523(a)(1)(C) surely encompasses both acts of commission as well as culpable omissions"). In any event, that part of *Haas* is still the law of this circuit.

We did go even further in *Haas,* however, and, distinguishing between the assessment of taxes on one hand, and the payment or collection of taxes on the other, reached a second holding: that § 523(a)(1)(C) did not cover attempts to evade or defeat the payment or collection of taxes. *Haas,* 48 F.3d at 1159 ("[T]he phrase 'attempt[s] in any manner to evade or defeat such tax' does not imply attempts to evade or defeat *payment* thereof."). That part of *Haas* is no longer the law in this circuit, however, because we overturned it in *In re Griffith,* 206 F.3d 1389 (11th Cir.) (en banc), *cert. denied,* --- U.S. ----, 121 S.Ct. 73, 148 L.Ed.2d 37 (2000).

*Griffith* involved a debtor who had not attempted to evade or defeat the assessment of any tax, but he had engaged in intra-family transfers of property for insufficient consideration in an attempt to avoid paying income taxes. Taking to heart the criticism by several circuits of our second holding in *Haas,* we overturned it and held that § 523(a)(1)(C) precludes discharge when the debtor "willfully attempted ... to evade or defeat" a tax at the payment stage, just as surely as it does where the attempted evasion occurs at the assessment stage. *Griffith,* 206 F.3d at 1393, 1395-96.

That holding in *Griffith* was based in part on the reasoning that a contrary interpretation of § 523(a)(1)(C) permitting a debtor to evade the collection of taxes would not serve the balance that section strikes between the "fresh start" policy and the policy of preventing tax evasion; it would only give an advantage to dishonest debtors. *Id.* at 1395 (citation omitted). Additionally, we recognized that if § 523(a)(1)(C) was read as being inapplicable to attempts to evade payment or collection of taxes, the result would be that the statutory language "willfully attempted in any manner to evade or defeat taxes" would apply

only in cases where a fraudulent return was filed; that situation, however, is already covered by the first part of § 523(a)(1)(C). *Id.* For these reasons, we held in *Griffith* that § 523(a)(1)(C) renders a tax debt nondischargeable where the debtor willfully attempted to evade or defeat the payment of the tax, even though the debtor did not attempt to evade or defeat the assessment of the tax. *Id.* at 1396-97.

To summarize, as the law of this circuit now stands, the conduct requirement of § 523(a)(1)(C) is not satisfied where a debtor has filed accurate tax returns and simply failed to pay taxes as the debtor in *Haas* did. 48 F.3d at 1157 ("The omission of the words 'or the payment thereof' from section 523(a)(1)(C) ... indicates that Congress did not intend that a failure to pay taxes, without more, should result in the nondischargeability of a debtor's tax liabilities in bankruptcy."). The conduct requirement is satisfied, however, where a debtor engages in affirmative acts to avoid payment or collection of taxes as the debtor in *Griffith* did. 206 F.3d at 1393-96. Dr. Fretz argues that he has simply failed to pay his taxes and, according to our decisions in *Haas* and *Griffith,* that is not enough to render his tax liability nondischargeable.

We disagree. We have never had a § 523(a)(1)(C) case involving a debtor who not only failed to pay taxes but also failed to file tax returns. That is not the situation presented in either *Haas* or *Griffith.* Dr. Fretz argues that *Haas* fits, but his failure to file returns distinguishes his situation from that of the debtor in *Haas* who did file returns each year, as required. *See* 48 F.3d at 1154. All that *Haas* establishes is that the failure to pay taxes, without more, does not bar discharge of tax debts.

Likewise, *Griffith* is not controlling either, except it does establish that at least where the debtor engaged in affirmative acts designed to evade payment, § 523(a)(1)(C) applies to bar discharge, even if there was no attempt to evade assessment of tax. The *Griffith* decision speaks of affirmative acts, because in that case there were affirmative acts (transfers of property for less than fair consideration) undertaken in the attempt to evade payment or collection of taxes. *Griffith* stands foursquare for the proposition that affirmative acts of evasion are sufficient, but it does not stand foursquare or otherwise for the proposition that affirmative acts are required. Put another way, *Griffith* did not hold—and because the facts of that case did not present the issue, it could not have held—that acts of omission alone cannot constitute an attempt in any manner to evade or defeat a tax within the meaning of § 523(a)(1)(C).

Although we have not previously faced the omission only issue presented in this case, the Third and Sixth Circuits have. Each of those circuits have held that omitting to file tax returns, when coupled with the failure to pay taxes, does satisfy the conduct requirement of § 523(a)(1)(C). *See In re Fegeley,* 118 F.3d 979,

984 (3d Cir.1997) ("Fegeley's intentional failure to file his tax returns, together with his failure to pay taxes when he had the resources to do so, was sufficient to prove that he attempted to evade or defeat his tax liabilities."); *In re Toti,* 24 F.3d 806, 809 (6th Cir.1994) ("[F]ailure to file a tax return and failure to pay a tax fall within the definition in § 523(a)(1)(C) of a willful attempt to evade or defeat a tax liability."). We think that the Third and Sixth Circuits got it right.

Section 523(a)(1)(C) does not contain an affirmative conduct requirement. Insofar as conduct is concerned, the plain statutory language simply requires that the debtor have "attempted in any manner to evade or defeat [a] tax." § 523(a)(1)(C). We agree with the other two circuits that the modifying phrase "in any manner" means what it says and covers attempts to evade or defeat a tax whether accomplished by "acts of culpable omission [or] acts of commission." *Fegeley,* 118 F.3d at 983 (citations omitted); *accord Toti,* 24 F.3d at 809 ("a plain reading of § 523(a)(1)(C) includes both acts of commission and acts of omission").

Our conclusion in this respect is supported by a number of prior decisions of this Court and the Supreme Court holding that the well-established meaning of the word "any" is all; not just some, but all. *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1186 (11th Cir.1997) (where " 'Congress did not add any language limiting the breadth of that word,' ... 'any' means all.") (quoting *United States v. Gonzales,* 520 U.S. 1, 5, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997)); *id.* at 1186 ("the adjective 'any' is not ambiguous; it has a well-established meaning"); *see also Lyes v. City of Riviera Beach,* 166 F.3d 1332, 1337 (11th Cir.1999) (en banc) (same); *United States v. Castro,* 837 F.2d 441, 445 (11th Cir.1988) (concluding that "any" meant "every" or "all").

Our holding that acts of omission designed to evade payment or collection of taxes are sufficient to satisfy § 523(a)(1)(C) is also supported by our reasoning in *Griffith,* where we explained that we "disfavor interpretations of statutes that render language superfluous," and "that courts have traditionally been reluctant to limit the means by which a taxpayer may 'willfully attempt in any manner to evade or defeat' taxes." 206 F.3d at 1395 (citations omitted). An interpretation of § 523(a)(1)(C) which covered only acts of commission and not culpable acts of omission would limit the means by which a taxpayer may be found to have willfully attempted to evade or defeat taxes, and it would tend to make the modifying phrase "in any manner" superfluous. For all of these reasons, we hold § 523(a)(1)(C) covers both acts of commission and acts of omission. Dr. Fretz' failure to file tax returns, coupled with his failure to pay his taxes, satisfy the conduct

requirement of § 523(a)(1)(C).[5]

### B. THE MENTAL STATE REQUIREMENT

As for the mental state requirement, a debtor's attempt to avoid his tax liability is considered willful under § 523(a)(1)(C) if it is done voluntarily, consciously or knowingly, and intentionally. *See Griffith,* 206 F.3d at 1396-97; *In re Tudisco,* 183 F.3d 133, 137 (2d Cir.1999); *Fegeley,* 118 F.3d at 984; *Birkenstock,* 87 F.3d at 952; *Dalton,* 77 F.3d at 1302; *Toti,* 24 F.3d at 809. Fraudulent intent is not required. *Fegeley,* 118 F.3d at 984 (rejecting debtor's contention that "willfulness language in the second prong of § 523(a)(1)(C) should be interpreted consistently with the criminal provisions of the Internal Revenue Code, and that 'proof of fraud is a necessary element of [that prong]' ") (alteration in original). Thus, all the government must prove is that Dr. Fretz:

(1) had a duty to file income tax returns and pay taxes;

(2) knew he had such a duty;  and

(3) voluntarily and intentionally violated that duty.

*See Griffith,* 206 F.3d at 1396;  *Fegeley,* 118 F.3d at 984. The first two components are not really at issue in this case. The real issue is about the third one. The third or willfulness component of the mental state requirement "prevents the application of the exception to debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts to evade tax liability are knowing and deliberate." *Birkenstock,* 87 F.3d at 952.

We reject Dr. Fretz' contention that "[t]he United States' argument that late filing of returns establishes willfulness under subsection (C) effectively would eliminate the 2-year time limit of subsection (B) from the Bankruptcy Code." He is referring to § 523(a)(1)(B), which provides:

(a) A discharge under § 727 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

* * *

(B) with respect to which a return, if required—

(i) was not filed;  or

---

[5]The reporting of Dr. Fretz' income to the IRS on Forms 1099 does not preclude a finding that he "attempted in any manner to evade or defeat [a] tax."  His employers, not Dr. Fretz, filed those forms with the IRS. That fact does not say anything about whether Dr. Fretz himself "attempted in any manner to evade or defeat [a] tax."  It only indicates that his attempt had little chance of succeeding.

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition ...

11 U.S.C. § 523(a)(1)(B). Even assuming that the returns Dr. Fretz signed that had been prepared by the IRS constitute late-filed returns for the purposes of § 523(a)(1)(B)(ii), the government's argument does not, as he suggests, eliminate discharge for debtors who file late returns. A debtor who simply files returns after they are due but at least two years before filing a bankruptcy petition can still obtain a discharge if he has not also attempted to evade or defeat the tax, within the meaning of § 523(a)(1)(C), as can a debtor who filed returns late due to mistake, inadvertence, or an honest misunderstanding of the tax laws. In any event, questions involving the late-filed returns in this case go to the conduct requirement of § 523(a)(1)(C)—whether the debtor attempted to evade or defeat the tax—and not to the mental state requirement, as Dr. Fretz seems to believe.

It is undisputed that Dr. Fretz had a duty to pay taxes and that he was aware of that duty. Indeed, he testified that he suffered mentally and emotionally throughout the years in question because of his awareness that he was failing to file returns and pay taxes as he knew he was required to do. He said that he was always mindful of his duty to pay taxes, and it weighed so heavily upon him that the IRS became the focus of his life. There is no evidence that Dr. Fretz' failure to file returns and pay taxes during these years was due to inadvertence or mistake; indeed, his own testimony rules out that possibility. As a practicing emergency room physician, he had the means to pay his taxes, and he had the ability either to file his tax returns himself or to engage an accountant to file the returns for him. Put bluntly, someone who can control his drinking enough to perform medical procedures during twelve- to twenty-four hour shifts in an emergency room over a period of years, can control his drinking enough to file tax returns and pay taxes during that same period. Instead of doing that, as Dr. Fretz himself put it, he "just totally ignored" his tax responsibilities. He chose to ignore them, just as he chose not to ignore his emergency room responsibilities. Under these circumstances, the finding that Dr. Fretz' attempt to evade or defeat his tax liability was not willful is clearly erroneous.

### III. CONCLUSION

For the foregoing reasons, we hold that Dr. Fretz' tax debts for the years in question fall within the scope of § 523(a)(1)(C), and therefore are not dischargeable in bankruptcy.

REVERSED.