LEROY C. GRIFFITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Griffith v. Commissioner
Docket Nos. 22089-80, 4032-85.
United States Tax Court
T.C. Memo 1989-70; 1989 Tax Ct. Memo LEXIS 70; 56 T.C.M. (CCH) 1263; T.C.M. (RIA) 89070; February 15, 1989
Theodore Brill and William H. Karo, for the petitioner. David R. *71 Smith, for the respondent. PARR
SUPPLEMENTAL MEMORANDUM OPINION PARR, Judge: On November 18, 1988, pursuant to Rule 161, [1] petitioner filed a Motion for Reconsideration of the Court's opinion rendered in , filed September 19, 1988. Petitioner's motion was timely, since he sought and obtained the Court's permission to file the motion within 60 days of the opinion rather than the 30 days specified in Rule 161. On November 23, 1988 the Court ordered respondent to respond to the motion on or before December 23, 1988. Respondent filed his objection on December 19, 1988. Petitioner has asked us to reconsider two aspects of our decision namely, the application of the tax benefit rule to the return of a security deposit in 1977 and the character of income that petitioner received when GTI Productions went out of business on March 31, 1975. For convenience, we will discuss each of these issues separately. Tax Benefit Rule
*72 In our prior decision we determined that Griffco, Inc. (Griffco), one of petitioner's wholly owned subchapter S corporations, had deducted a security deposit as rent in 1972. Petitioner was unable to prove otherwise. In 1977 Griffco recovered the security deposit. We determined that the tax benefit rule required petitioner to include the security deposit in income in 1977. In his motion, petitioner is not questioning our determination that Griffco deducted the security deposit as rent in 1972, or that Griffco recovered the security deposit in 1977. Petitioner argues, however, that the tax benefit rule is inapplicable in this case because, assuming Griffco deducted the security deposit in 1972, the deduction was erroneous. Since the prior deduction was not legally proper, respondent is not allowed to adjust Griffco's taxable income in the year the improperly deducted amount is recovered. Petitioner relies primarily on , to support his position. Respondent argues that we should not consider petitioner's claim because he is raising this new issue for the first time in his motion. Moreover, *73 respondent states that even if the Court considers petitioner's argument, the prior decision applying the tax benefit rule was correct. It is the Court's policy to try all issues raised in a case in one proceeding and in most cases reconsideration of proceedings already disposed of by opinion are not permitted -- unless there is substantial error or unusual circumstances. . In determining there was no substantial error or unusual circumstances in this case we also reconfirm, on the merits, the correctness of our original determination. Moreover, petitioner's reliance on Southern Pacific Transportation Co. is misplaced. Griffco received a tax benefit in 1972 when it deducted a security deposit of $ 24,950 [2] as rent. Griffco recovered the deposit in 1977. The tax benefit rule provides that Griffco must include the sum in its 1977 income. The purpose of the tax benefit rule is "to achieve rough transactional parity in tax, * * * and to protect the Government and the taxpayer from the adverse affects of reporting *74 a transaction on the basis of assumptions that an event in a subsequent year proves to have been erroneous * * *". . Generally, the tax benefit rule will only apply to those situations in which the original deduction was legally permissible. If the initial deduction was not permissible, the subsequent recovery of that amount is not includible in the taxpayer's income. ;; , affd. ; , affd. ; . *75 In certain cases, however, the taxpayer has a "duty of consistency," which precludes the application of the so-called erroneous deduction exception to the tax benefit rule. . Thus, if the taxpayer is bound by a duty of consistency, he must include the erroneously deducted amount in income in the year of recovery. ; , affd. on other grounds ; [3]. *76 The three elements of "duty of consistency" or "quasi-estoppel" are set forth in , which this Court adopted in . The taxpayer has a duty of consistency if: (1) the taxpayer has made a representation or reported an item for tax purposes in one year; (2) the Commissioner has acquiesced in or relied on that fact for that year; and (3) the taxpayer desires to change the representation previously made in a later year after the statute of limitations has run on the initial year. Furthermore, it makes no difference whether the initial misrepresentation is deliberate or unintentional. . The duty of consistency binds Griffco in this case. On its 1972 tax return Griffco treated the security deposit as rent. Respondent had no reason to question the rent expense on the 1972 return. In 1977, when Griffco recovered the $ 24,950 it previously deducted as rent, it claimed the amount was a return of a security *77 deposit. This is a change from the representation Griffco previously made. The result is that, under the duty of consistency, Griffco cannot treat the recovered amount as the return of a security deposit and must instead treat the amount as recovered rent. Thus, Griffco must recognize $ 24,950 in income in 1977. Character of Income from GTI Productions, Inc.
In our prior opinion we determined that petitioner received dividend income from GTI Productions, Inc. (GTI) in the amount of $ 12,373.68 in 1974 and $ 61,349.75 in 1975. Additionally, we determined that GTI ceased doing business on March 31, 1975 and as a result, petitioner received $ 30,658.90 in income from relief of indebtedness (the amount outstanding in his shareholder loan account). At this juncture petitioner does not question our finding that he received the above amounts as income in 1974 and 1975. Instead, petitioner asks that we reconsider the character of the amounts, an issue never specifically addressed in our earlier decision. Petitioner sets forth two separate arguments to support his contentions. First, petitioner claims a portion of the dividends he received is a tax-free return of basis and that *78 another portion is appropriately taxed as long-term capital gain. Second, petitioner claims that when GTI ceased doing business there was a liquidation. The amount petitioner received from the relief of the indebtedness as well as the dividends petitioner received in 1975 were thus part of a liquidating distribution and as such, the income should be treated as long-term capital gain. We will address each of these arguments separately. Dividend Income
Under section 316 a dividend is any distribution of property made by a corporation to its shareholders out of current or accumulated earnings and profits. The amount which is not treated as a dividend under section 316, i.e., the excess of the distribution over current and accumulated earnings and profits, is first applied to reduce the shareholder's adjusted basis of his stock in the corporation. Section 301(c)(2). To the extent the distribution also exceeds the shareholder's adjusted basis in the stock it is treated as gain from the sale or exchange of property. Section 301(c)(3). In this case petitioner received distributions in 1974 and 1975. We must determine what portion of the total distribution is to be taxed as ordinary *79 income, what portion, if any, is a tax-free return of basis and what portion, if any, is to be taxed as long-term capital gain. Petitioner is not asserting new calculations of earnings and profits. Instead, petitioner relies on the statutory notice of deficiency issued in docket No. 22089-80 and states that according to respondent's determinations on audit, a portion of the dividend income petitioner received should be a tax-free return of basis and that another portion should be treated as long-term capital gain. Respondent, also relying on the statutory notice, argues that all of petitioner's dividend income is properly treated as ordinary income. We agree with petitioner. The facts in this case establish: (1) GTI reported a loss for its year ending March 31, 1974 of $ 1,307. (2) GTI reported taxable income for its year ending March 31, 1975 of $ 6,973 less its net operating loss from the previous year of $ 1,307, resulting in total taxable income of $ 5,666. (3) In his statutory notice of deficiency, in docket No. 22089-80, respondent determined that between January 1, 1974 and March 31, 1974 petitioner received a total of $ 2,112 in distributions from GTI. (4) Between *80 April 1, 1974 and December 31, 1974 petitioner received distributions of $ 10,261.68. (5) In his statutory notice of deficiency in docket No. 22089-80, respondent determined GTI's correct taxable income for the tax year ending March 31, 1975 was $ 93,184, the corrected income tax was $ 36,502, and available earnings and profits were $ 56,682. (We note that petitioner uses the notice of deficiency and the amounts as corrected by audit in arguing his case for reconsideration). In his objection respondent states that the $ 56,682 is not the amount of available earnings and profits but rather the amount actually distributed. Respondent is incorrect. It is quite apparent from the statutory notice of deficiency that $ 56,682 is the amount left after subtracting the tax liability from the taxable income. Furthermore, respondent determined, although we did not agree, that $ 63,323.62 was distributed to petitioner (after making adjustments for petitioner's basis in loans to GTI). (6) Between January 1, 1975 and March 31, 1975 GTI made payments on behalf of petitioner totalling $ 61,349.75. (7) In the statutory notice of deficiency in docket No. 22089-80 respondent included petitioner's *81 outstanding loan account as part of GTI's total distribution to petitioner in 1974. We determined however that the 1974 loan accounts were valid. Thus, we cannot merely accept the figures in the notice of deficiency as accurate. Based upon the above facts we make the following determinations. In 1974 GTI distributed $ 12,373.68 to petitioner. Of this amount, $ 2,112 was distributed by March 31, 1974, and the remaining $ 10,261.68 was distributed between April 1, 1974 and December 1, 1974. As of March 31, 1974 GTI had no accumulated or current earnings and profits. As a result petitioner is entitled to a tax-free return of basis. According to GTI's 1974 tax return and the notice of deficiency, petitioner is entitled to receive $ 500 tax free as a return of basis. The remainder of the distribution, $ 1,612, is taxed as long-term capital gain. The amount distributed between April and December is attributable to GTI's 1975 earnings and profits. We have determined there were current earnings and profits of $ 56,682 for GTI's taxable year ending March 31, 1975. As such, the entire distribution of $ 10,261.68 is taxed as ordinary income. Also, the earnings and profits are reduced *82 by the amount of that distribution, leaving $ 46,420.32 in current earnings and profits for distributions made between January 1, 1975 and March 31, 1975. GTI distributed $ 61,349.75 to petitioner between January 1, 1975 and March 31, 1975. We have determined $ 46,420.32 should be taxed as ordinary income. The remaining $ 14,929.43 should be taxed as long-term capital gain since petitioner had no basis remaining in his GTI stock in 1975. In determining GTI's earnings and profits we have reduced its taxable income by the amount of the corrected tax liability. In this regard GTI was an accrual basis taxpayer and GTI's tax liability should be subtracted as an accrued liability. We cannot accept respondent's arguments that all of the distributions should be taxed as ordinary income. Respondent argues that the total available earnings and profits on March 31, 1975 were $ 93,184 and therefore all of the distributions are taxable. Respondent is wrong on two counts. First, in the notice of deficiency respondent determined that $ 2,112 in distributions had been made by March 31, 1974 and that there were no current or accumulated earnings and profits as of that date. Second, earnings *83 and profits are reduced by the amount of taxes paid. For an accrual basis taxpayer earnings and profits are reduced by the amount of taxes accrued. We have concluded that GTI was an accrual basis taxpayer and thus the earnings and profits must be reduced for GTI's accrued tax liability. GTI's Cessation of Business
In our initial opinion we determined petitioner had $ 30,658.98 income from the relief of indebtedness. Also, as stated above petitioner had dividend income of $ 61,349.75 in 1975. Petitioner is not questioning these findings but would like the Court to consider the character of the income. In doing so, petitioner for the first time argues that the income received by petitioner was part of a distribution in liquidation of GTI. Respondent contends there was no liquidating distribution. A distribution in liquidation of a corporation has potentially different tax consequences to a shareholder than does a normal corporate distribution. See sections 301 and 331. A corporation is completely liquidated when the corporation winds up its affairs by settling its debts and realizing and distributing its assets. , *84 affd. . The decisive elements of a corporate liquidation are an intent to liquidate combined with acts done to effectuate that purpose. . Petitioner has not directed us to any portion of the record which would indicate GTI intended to liquidate, nor do we believe he could. Petitioner argued at trial that GTI was still in business during 1976 and 1977. We found to the contrary. The fact that we determined GTI ceased doing business does not translate into an intent of GTI to liquidate. Absent evidence of an intent to liquidate, we cannot determine that income from relief of indebtedness or the other distributions were part of a distribution in liquidation of the corporation. Consequently, petitioner must recognize the $ 30,658.98 as ordinary income. The tax treatment of the 1975 dividend income remains as discussed above. To reflect the foregoing, An appropriate order will be issued.
Footnotes
1. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure and all section references are to the Internal Revenue Code.↩
2. The amount of the security deposit was $ 24,950. In one chart in the Court's prior decision the amount was incorrectly listed as $ 24,930. (Slip opinion p. 47)↩
3. This Court applied the erroneous deduction rule in , but nevertheless held that the duty of consistency prevented the taxpayer from asserting the original deduction was improper. The Court of Appeals for the Ninth Circuit affirmed the decision but rejected the erroneous deduction rule and therefore did not consider our application of the duty of consistency. .↩