**Patrick Fisher**                                          **Elisabeth A. Shumaker**
**Clerk**                                                   **Chief Deputy Clerk**

March 29, 1996

**TO:**    ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:**    95-4001, Dalton v. Internal Revenue Service
           Filed March 12, 1996 by Judge Anderson

Please be advised of the following correction to the captioned decision:

Page four, line two, the citation should be 26 U.S.C. §7201 instead of
26 U.S.C. §7201(a).

Please make this correction to your copy.

Very truly yours,

Patrick Fisher,
Clerk

By:

Beth Morris
Deputy Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**Filed 3/12/96**

**TENTH CIRCUIT**

EUGENE DALTON,

      Appellant,

v.

INTERNAL REVENUE SERVICE,

      Appellee.

No. 95-4001

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 94-C-82-J)**

David O. Black, Black, Stith & Argyle, Salt Lake City, Utah, for Appellant.

Gary D. Gray, Tax Division, Department of Justice, Washington, D.C. (Laurie Snyder, Tax Division, Department of Justice, Washington, D.C. and Scott M. Matheson, Jr., United States Attorney, District of Utah, of Counsel, Salt Lake City, Utah, with him on the brief), for Appellee.

Before **ANDERSON, KELLY,** and **HENRY**, Circuit Judges.

**ANDERSON,** Circuit Judge.

Following his discharge in bankruptcy, Eugene Dalton commenced this adversary proceeding seeking a determination that certain federal tax liabilities had been discharged.

The bankruptcy court held that the tax debts were not dischargeable under 11 U.S.C. § 523(a)(1)(C),[1] and the district court affirmed. On appeal, Dalton contends that § 523 does not apply to attempts to conceal assets in order to evade or defeat the payment or collection of taxes, and he also contends that the finding that he willfully concealed assets was clearly erroneous. We affirm.

Dalton filed for Chapter 7 bankruptcy relief on December 7, 1990. On his bankruptcy schedules he reported assessed federal income tax liabilities for tax years 1976 through 1978, 1981, and 1983 through 1985 in the total amount of $13,668,866, and he listed assets worth $3,250. The government filed no claim or objection, and an order of discharge under 11 U.S.C. § 727 issued on March 18, 1991. On October 6, 1992, Dalton brought this adversary proceeding, seeking a determination that the listed federal income tax liabilities had been discharged. The government answered that Dalton had concealed assets in a willful attempt to evade or defeat the taxes, and therefore the tax debts were excepted from discharge under 11 U.S.C. § 523(a)(1)(C).

We review questions of statutory interpretation de novo. Murray v. Montrose County Sch. Dist. RE-1J, 51 F.3d 921, 928 (10th Cir.), cert. denied, 116 S. Ct. 278 (1995). When interpreting a statute, we first examine the statutory language itself. Goheen v. Yellow Freight Sys., 32 F.3d 1450, 1453 (10th Cir. 1994). If unambiguous statutory language is not defined, we give the language its common meaning, provided

---

[1]Section 523(a)(1)(C) provides that an individual bankrupt debtor is not discharged from any tax debt which the debtor "willfully attempted in any manner to evade or defeat."

that the result is not absurd or contrary to the legislative purpose. Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.), 4 F.3d 1556, 1564 (10th Cir. 1993), cert. denied, 114 S. Ct. 1061 (1994). Thus, we look not only to a single sentence or member of a sentence, but to the provisions of the whole law, as to its object and policy. Kelly v. Robinson, 479 U.S. 36, 43 (1986).

At issue in this case is 11 U.S.C. § 523(a)(1)(C) which provides that a discharge under § 727 does not discharge an individual from any debt for a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." Since the government makes no claim regarding fraudulent returns, the only question is whether the provision's second exception applies.

Noting that exceptions to discharge are strictly construed in favor of debtors, In re Aste, 129 B.R. 1012 (Bankr. D. Utah 1991), and looking literally at § 523(a)(1)(C), Dalton contends that his conduct was not a willful attempt to evade or defeat taxes. Dalton argues that the only evidence against him concerned his attempts to avoid the payment or collection of taxes, terms which the provision does not expressly include, and he further argues that the exclusive means to raise a claim involving concealed assets is through an affirmative action under § 727.

As authority for his literal reading that § 523 does not encompass the evasion of tax payment or collection, Dalton cites Gathwright v. United States (In re Gathwright),

102 B.R. 211, 213 (Bankr. D. Or. 1989).[2]  Specifically, the court in <u>Gathwright</u> compared 26 U.S.C. § 7201, which states that it is a felony to "willfully attempt[] in any manner to evade or defeat any tax imposed by [Title 26] or <u>the payment thereof</u>" (emphasis added), with 11 U.S.C. § 523(1)(a)(C), which lacks the emphasized language, and concluded that nonpayment was irrelevant to a determination of whether or not the debtor had willfully attempted to evade or defeat a tax under § 523.  <u>Id.</u> at 213.  However, the reasoning of <u>Gathwright</u> has been rejected by the majority of courts that have addressed the question.

Most recently, the Fifth Circuit refused to base dischargeability upon a determination that the debtor may not have engaged in felonious conduct under criminal provisions of the Internal Revenue Code.  <u>Bruner v. United States (In re Bruner)</u>, 55 F.3d 195, 200 (5th Cir. 1995) (finding the Bruners outside the class of honest debtors entitled to discharge, based on "pattern of non-payment . . . accompanied by a pattern of failure to file returns and . . . conduct . . . aimed at concealing income and assets").  Similarly rejecting a debtor's argument that willful must be defined according to its use in felony statutes, thus precluding a finding of the requisite willfulness, the Sixth Circuit found a debtor's willful failure to file returns and pay taxes, even though he had the financial ability to do so, placed him outside "the category of honest debtors."  <u>Toti v. United States (In re Toti)</u>, 24 F.3d 806, 808-09 (6th Cir.), <u>cert. denied</u>, 115 S. Ct. 482 (1994); <u>see</u>

---

[2]Dalton also cites <u>Peterson v. Commissioner (In re Peterson)</u>, 132 B.R. 68, 71 (Bankr. D. Wyo. 1991), which followed <u>Gathwright</u>.  However, Dalton neglects to note that <u>Peterson</u> was reversed on that precise ground.  <u>Id.</u>, <u>rev'd</u>, 152 B.R. 329, 335 (D. Wyo. 1993).

also Fridrich v. IRS (In re Fridrich), 156 B.R. 41, 43 (D. Neb. 1993) (finding that § 523(a)(1)(c) excepts from discharge taxes that a taxpayer prevents the IRS from collecting); Commissioner v. Peterson (In re Peterson) 152 B.R. 329, 335 (D. Wyo. 1993) (finding that evidence of debtor's attempts to avoid payment is relevant to court's consideration of whether tax is dischargeable); Berzon v. United States (In re Berzon), 145 B.R. 247, 250-51 (Bankr. N.D. Ill. 1992) (basing nondischargeability upon unexcused late filings, together with misrepresentations to escape payment); Jones v. United States (In re Jones), 116 B.R. 810, 815 (Bankr. D. Kan. 1990) (finding that § 523(a)(1)(C) encompassed debtor's attempts to conceal assets to avoid payment and collection). But cf. Haas v. IRS (In re Haas), 48 F.3d 1153, 1158 (11th Cir. 1995) (holding that bankruptcy debtor's knowing failure to pay taxes, without more, was not a willful attempt in any manner to evade or defeat such tax under § 523).

We generally agree with the majority reasoning. The purpose of the Bankruptcy Code is to provide the honest, but unfortunate, debtor a fresh start. Grogan v. Garner, 498 U.S. 279, 286-87 (1991). Prior to 1966, tax debts were not dischargeable. In 1966, "consisten[t] with the rehabilitory purpose of the Bankruptcy Act," amendments were enacted "to make dischargeable in bankruptcy debts for taxes which became legally due and owing more than 3 years preceding bankruptcy, and to limit the priority accorded to taxes." S. Rep. No. 1158, 89th Cong., 2d Sess. (1966), 1966 U.S.C.C.A.N. 2468, 2468, 2469. However, noting that "the purpose of this bill is to provide relief for the financially

unfortunate and not to create a tax evasion device," Congress also expressed its intention to "specifically except[] from discharge taxes . . . with respect to which [the debtor] had made a false or fraudulent return or which he had otherwise attempted to evade." Id. at 2470.

Accordingly, Congress enacted the equivalent of § 523(a)(1)(C) to make nondischargeable those taxes which the debtor "willfully attempted in any manner to evade or defeat."[3] Although the terms are not statutorily defined, the language is unambiguous. Moreover, the phrase has well-known judicial interpretation in tax cases, which Congress presumably intended to adopt. See Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 267-68 (1992). Thus, Spies v. United States, 317 U.S. 492, 499 (1943) is directly on point:

> Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation. Nor would we by definition constrict the scope of the Congressional provision that it may be accomplished "in any manner." By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.

[3]Notably, the provision tracks with 26 U.S.C. § 6501(c)(2) which excepts cases involving "a willful attempt in any manner to defeat or evade" from the general three year statute of limitations on the assessment and collection of taxes.

Id. (interpreting the language of 26 U.S.C. § 145(b), currently codified at 26 U.S.C. § 7201).

Clearly, the contested language is to be expansively defined. Consequently, as the court in Jones observed, "the modifying phrase 'in any manner' is sufficiently broad to include willful attempts to evade taxes by concealing assets to protect them from execution or attachment." Jones, 116 B.R. at 814. Furthermore, as Jones also noted, a contrary reading would effectively render the second exception of § 523(a)(1)(C) meaningless or superfluous. That is, unless the provision encompasses willful attempts to evade the payment or collection of taxes, then the only nondischargeable taxes under the section would be those resulting from fraudulent returns.[4] Finally, given Congress' express purpose of relieving only the "honest" debtor from the debt of stale taxes, any statutory interpretation of "evade or defeat" which relieves the dishonest debtor who conceals assets to avoid the payment or collection of taxes, but which penalizes the same dishonesty to avoid assessment, would be an absurd result.

Nonetheless, recognizing the general rule that exceptions to discharge are to be strictly construed in favor of the debtor, we also agree with the narrow application of our colleagues in the Eleventh Circuit: "[A] debtor's failure to pay his taxes, alone, does not fall within the scope of section 523(a)(1)(C)." Haas, 48 F.3d at 1158. Again, we conclude that any other application would ignore the congressional intent to enact a

---

[4]Tax liabilities resulting from situations in which no returns were filed or in which specified late returns were filed are excepted from discharge under 11 U.S.C. § 523(a)(1)(B).

statute of limitations beyond which the honest debtor's unpaid taxes will be discharged.[5]

Thus, we hold that nonpayment, by itself, does not compel a finding that the given tax debt is nondischargeable. Rather, nonpayment is relevant evidence which a court should consider in the totality of conduct to determine whether or not the debtor willfully attempted to evade or defeat taxes. Peterson, 152 B.R. at 335.

In any event, Dalton's subsidiary argument fails under our interpretation that § 523(a)(1)(C) encompasses the various schemes, including concealment, by which tax evasion may be accomplished. Thus, we reject his contention that the alleged method of evasion, i.e., the concealing of assets, is exclusively covered by 11 U.S.C. § 727, and must be subject to that section's one year statute of limitations.

Although subsection 727(a)(2) expressly allows a creditor to object to a debtor's discharge, if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . . or concealed . . . property of the estate," nothing in that subsection precludes the government from defensively asserting concealment as a basis for the automatic exceptions under § 523. Dalton has cited no authority, nor have we discovered any, which indicates that Congress intended the provisions to be mutually exclusive. Rather, it is logical and consistent with the statutory history that taxing authorities would be able to assert the same objections to discharge that any other creditor might assert, and,

---

[5]Congress was specifically concerned with the dilatory tax collectors, who, "assured of a prior claim on the assets of a failing debtor and assured of the nondischargeability of uncollectible tax claims, have allowed taxes to accumulate and remain unpaid for long periods of time." S. Rep. No. 1158, 89th Cong., 2d Sess. (1966), 1966 U.S.C.C.A.N. 2468, 2471.

at the same time, that the special provisions relating to taxing authorities would provide additional, sometimes overlapping, protections.[6]

Finally, as his second claim of error, Dalton contends that the bankruptcy court erred in finding that he willfully concealed assets. A debtor's actions are willful under § 523(a)(1)(C) if they are done voluntarily, consciously or knowingly, and intentionally. Toti, 24 F.3d at 809. The determination that a debtor willfully concealed assets is a finding of fact which we review for clear error. See In re Yonikus, 996 F.2d 866, 872-73 (7th Cir. 1993); cf. Bradshaw v. United States, 71 F.3d 1517, 1525 (10th Cir. 1995) (defining willful in the context of 26 U.S.C. § 6672, and noting that our cases treat the determination of willfulness as an issue of fact). "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings . . . ." Anderson v. Bessemer City, 470 U.S. 564, 575 (1985). The government bears the burden of proving by a preponderance of the evidence that the taxes are nondischargeable. Grogan, 498 U.S. at 291.

Without making any determination of actual title to the concealed property, the bankruptcy court found that Dalton had willfully attempted to conceal his ownership interest in two assets: 1) his condominium residence (the "condo"), and 2) an oil reclamation company which he organized, Petroleum Processors, Inc. ("PPI"). The court

---

[6]We note that similar special automatic protections are also afforded claims for alimony, child support, and certain educational loans under other subsections of § 523.

specifically noted that it found the testimony of Mrs. Dalton, who is the primary stockholder of PPI, to be incredible.

Regarding the condo, Dalton argues that he could not have been evading taxes, since at the time that it was purchased, in 1980, he was solvent and no tax assessment was made until 1982. As to PPI, Dalton contends that, since the court did not find his testimony to be incredible, the court clearly erred in finding that "the organization and the operation of that company took the experience of someone like Mr. Dalton with years of experience in the oil business and that expertise." Oral ruling, Appellee's App. at 13.

In making its findings, the court cited evidence which showed that when the condo was purchased, Dalton was engaged to his present wife, and he contributed at least $60,000 of the $106,000 condo purchase price. The court also noted Dalton's testimony that he did not intend to make a gift to his betrothed, that he did not report the payment as a gift to her, that he has lived in the condo since its purchase, that he has participated in all payments and upkeep, and that the deed naming his wife as sole grantee was not conveyed until two years following purchase, at about the time the assessments were made.[7] Additionally, the bankruptcy court cited the testimony of an IRS agent who stated

_____

[7]During oral argument, Dalton's counsel represented that the finding that there was a deed was based on incorrect testimony given by Mrs. Dalton, and in fact, no deed has ever issued to either Mr. or Mrs. Dalton from the seller, and the only documentation of the purchase and transfer is an earnest money contract. This point bolsters the government's case, inasmuch as such contracts transfer equitable title, which presumably would reflect the proportional contribution attributable to Dalton and his wife. See Ciet v. Kaufman, 902 P.2d 153, 155 (Ut. Ct. App. 1995). Moreover such earnest money contracts typically reserve the precise designation of
(continued...)

that during 1980, at or around the time the condo was purchased, he had informed Dalton

of a personal tax investigation which was related to an investigation and litigation in

another matter concerning Dalton and Dalton's company, Arizona Fuels Corp.[8]

_____

[7](...continued)
grantee(s) until the deed is executed.

[8]In the late 1970's, the United States sued Dalton and Arizona Fuels Corp. to recover delinquent payments which were due to the Department of Energy. At the time he transferred the condo purchase money, Dalton was appealing a judgment in excess of two million dollars. See United States v. Arizona Fuels Corp., 638 F.2d 239 (Temp. Emer. Ct. App. 1980), cert. denied, 451 U.S. 985 (1981).

While the present case is not otherwise related to the previous litigation, the government points out that the Temporary Emergency Court of Appeals found that Dalton had testified that "he had concealed money in nominee bank accounts because he did not want the Department of Energy to find out about it until the money was spent." United States v. Arizona Fuels Corp., 681 F.2d 797, 800 (Temp. Emer. Ct. App. 1982) ("Arizona Fuels II"). Arizona Fuels II further noted that "the financial records of Arizona Fuels omitted some transactions, misrepresented others, and concealed the diversion of corporate funds to Eugene Dalton's personal use." Id.

Notably, after losing both Arizona Fuels appeals, and having been required to turn over all his property, including the condo, to a receiver in Arizona, Dalton filed bankruptcy in Colorado, in an attempt to have the disposition of his assets transferred to another jurisdiction. See Dalton v. United States (In re Dalton), 733 F.2d 710 (10th Cir. 1984), cert. dismissed, 469 U.S. 1185 (1985). As In re Dalton sets forth, the district court of Colorado withdrew its reference of bankruptcy proceedings and granted the government's motion to transfer venue to Arizona, and Dalton's appeal to the Tenth Circuit was dismissed for lack of jurisdiction. However, in its recitation of facts, this court specifically noted Dalton's ownership of property which was not located in Arizona: "Dalton does have some assets; one of these is the San Miguel Ranch, outside of Nucla, Colorado. Also he owns a condominium apartment in Salt Lake City, Utah and an airplane." Id. at 712 (emphasis added). Evidently, in his previous attempt to invoke this Circuit's jurisdiction, Dalton asserted ownership in the property which he now eschews.

In any event, in concluding that mandamus was unwarranted, In re Dalton
(continued...)

Finally, the bankruptcy court quoted from Dalton's settlement of the Arizona Fuels litigation in 1984, which specifically provided that the Arizona receiver who had taken control of all Dalton's property, would quitclaim the condo to Dalton "'subject to any and all claims of the United States or any tax liability now validly assessed or hereafter validly assessed against Dalton.'" Appellee's App. at 10. Nonetheless, as the bankruptcy court noted, immediately upon receiving the deed, Dalton recorded a quitclaim deed from himself to his wife prior to recording the receiver's deed to himself.

Thus, in making its ultimate finding of willful concealment in order to evade or defeat taxes, the court first found that at the time of the purchase, Dalton knew of the tax investigation which was likely to result in a significant assessment, his transfers of money to his betrothed's account were accomplished without any documentation which would properly account for the transaction, and that these circumstances, combined with his actions respecting the settlement of the Arizona Fuels litigation indicated an intent to conceal his interest in the condo to avoid attachment of the IRS liens. This finding is not clearly erroneous.

With regard to PPI, the evidence shows that Dalton, an engineer, possessed the necessary expertise and contacts to get the business started, and, at that time, he knew he

---

[8](...continued)
observed that "Dalton is searching for a court that has not had extensive exposure to his problems, and at the same time is seeking to avoid facing up to the ultimate decision." Id. at 718. Apparently, the passing years have effected little change in Dalton's character.

owed millions of dollars in taxes. Moreover, the court specifically found Mrs. Dalton's assertions that expertise was not required to be unbelievable. This finding is supported by Dalton's own testimony, which confirmed that setting up PPI was his idea, based on a professional contact, and that his expertise was necessary to gain the permits and to assure compliance with the legalities such as reporting to the EPA. Furthermore, Dalton testified that he used his expertise and contacts to identify and obtain necessary equipment, and that he consulted with his wife regarding PPI on a daily basis. And finally, the evidence showed that he signed numerous documents related to the company, and that at various times he was represented to hold positions such as director, vice president, manager, and agent. Nonetheless, he received no stock in the company and he advised PPI that he required no payment for his services.

Essentially, Dalton contends that the work he performed for PPI was no different from the consulting work he performed for other companies in which he held no interest. At oral argument, Dalton's counsel stressed that no assets were diverted to PPI, and that Dalton merely donated his time, expertise, and ideas. However, the argument ignores the obvious fact that the arrangements he allowed or directed gave his wife most of the company's stock and assured her of a full time salary with benefits, while at the same time, nothing of value was distributed or attributed to Dalton, despite the essential services he rendered.

We are mindful of Dalton's testimony that "other motives animated him in these matters." Spies, 317 U.S. at 500. Given the evidence, however, this is not a case of tax or business planning designed to minimize taxes (or achieve some other lawful objective) with bankruptcy and unfunded tax liability occurring later. Instead, Dalton gave contradictory testimony that his contribution to the condo purchase price was not a gift, but was because he had so much property, his wife had so little, and "[s]he wanted something in her name." Appellant's App. at 13. In light of the strong motive for tax evasion, the bankruptcy judge could also reject Dalton's testimony that the arrangement with PPI was solely an effort to give his wife a business opportunity, notwithstanding his extensive and essential involvement in the technical and regulatory aspects of the business. Appellee's App. at 35-37.

"To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liability would seriously impair the effective administration of the tax policies of Congress." Commissioner v. Court Holding Co., 324 U.S. 331, 334 (1945); cf. Helvering v. Horst, 311 U.S. 112, 116-17 (1940) (taxpayer who receives no actual payments for services or interest may not escape taxation by diverting right to income to family member). Accordingly, the bankruptcy court's finding that Dalton acted willfully to conceal his interest in PPI in order to evade or defeat taxes is not clearly erroneous.

AFFIRMED.