**In re Alan H. SCHAEFFER, SSN 126 38 1580, Debtor.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Alan H. SCHAEFFER, Defendant.**

**Bankruptcy No. 94 19453 MSK, Adversary No. 95 1485 DEC.**

United States Bankruptcy Court, D. Colorado.

June 14, 1996.

Sanford W. Stark, U.S. Department of Justice, Washington, DC, for Plaintiff United States of America, on Behalf of its Agency, the Internal Revenue Service.

Guy B. Humphries, Guy B. Humphries Law Office, Denver, CO, for Defendant Alan H. Schaeffer.

## OPINION AND ORDER

DONALD E. CORDOVA, Bankruptcy Judge.

THIS MATTER came on for trial on June 10, 1996, on the Plaintiff, United States of America's ("IRS") Complaint to Determine Dischargeability of defendant's 1978 and 1981 federal income tax deficiencies pursuant to 11 U.S.C. § 523(a)(1)(C). Based upon the evidence presented at trial, the Court makes the following findings of fact and conclusions of law.

## FACTUAL FINDINGS

The essential facts are generally undisputed by the parties. The Defendant and his ex-wife, Patricia Schaeffer ("Mrs. Schaeffer"), were married in 1979. On February 24, 1984, they purchased a residence located at 6 Wingfoot Way in Littleton, Colorado, for the sum of $234,000.00. The parties each contributed marital and personal funds for the purchase of the property. They took title to the property as joint tenants, free and clear of any encumbrances. (Government Exhibit C.) The property was their only residence and their primary asset.

On or about April 11, 1985, the IRS mailed to the defendant a Notice of Deficiency for his 1978 individual income tax liabilities. (Government Exhibit D.) On April 12, 1985, the IRS mailed to the defendant and Mrs. Schaeffer a Notice of Deficiency for their 1981 joint individual income tax liabilities. (Government Exhibit E.) The claimed deficiency was $2,208.00 plus $110.40 for the year 1978, and $26,747.00 and $1,339.00 for 1981. In June of 1985, the defendant and Mrs. Schaeffer petitioned the United States Tax Court for a redetermination of their tax liabilities.

Prior to the time the U.S. Tax Court ruled on their petition, the Defendant quit claimed his interest in the residence to Mrs. Schaeffer for a stated $10.00 consideration. (Government Exhibit L.) On that same ·day, March 29, 1990, the Defendant entered into a Marital Agreement with Mrs. Schaeffer wherein he agreed to quit claim his interest in the real property and a 1987 Toyota Van to Mrs. Schaeffer without any consideration. (Government Exhibit K.) · Further, the conveyance was not made in consideration of any legal separation or dissolution of marriage proceeding. The June 14, 1996 Defendant, Mrs. Schaeffer, and their six children continued to reside in the home until August of 1993 when Mrs. Schaeffer filed for a divorce. During this period the wife paid the family expenses with funds the Defendant gave to her. At the time of the filing of the divorce proceeding, she and the children vacated the home, but regained possession following the issuance of a restraining order directing the Defendant to leave the premises.

Both parties were aware of the IRS' claims against them and their potential liability at the time defendant conveyed his interest to Mrs. Schaeffer. In February of 1990, the Defendant hired tax attorneys to represent him and his wife in defense of these claims. (Government Exhibit J.) Defendant consulted with these attorneys about his tax liabilities before he conveyed his interest in the residence to his ex-wife. One week following the conveyance, his attorneys sent a letter to the IRS requesting relief from liability for Mrs. Schaeffer from the 1978 and 1981 deficiency tax under the "innocent spouse" provisions of the Internal Revenue Code § 6013(e). (Government Exhibit M.) The attorneys did not disclose the Marital Agreement or the transfers made by the defendant to his wife. Thereafter, the IRS conceded the issue, thereby relieving Mrs. Schaeffer from any liability for the tax delinquencies. (Government Exhibit N.) In March, 1991, the Defendant stipulated to the tax deficiencies for the years 1978 and 1981 in the amounts previously asserted by the IRS since 1985, plus penalties and interest. (Government Exhibits O and P.)

The Defendant then filed for protection under Chapter 7 of the Bankruptcy Code on

September 28, 1994. He listed his tax indebtedness owed to the IRS primarily as an unsecured claim in the approximate amount of $100,000.00. The Defendant was granted a discharge on February 9, 1995, and this adversary proceeding was filed on August 16, 1995, to determine whether the tax indebtedness is dischargeable under 11 U.S.C. § 523(a)(1)(C).

## MERITS

Section 523(a)(1)(C) of the Bankruptcy Code provides that a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt—*(1) for a tax ...—(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax ...* Since the IRS does not contend that the Defendant made a fraudulent return, the only issue to resolve is whether Defendant's transfer of his interest in the real property to his wife was made with the intent to evade or defeat the tax liabilities.

Both parties rely on the case of *Dalton v. Internal Revenue Service*, 77 F.3d 1297 (10th Cir.1996) in support of their respective positions. The *Dalton* court held that a debtor's actions are willful under § 523(a)(1)(C) if they are done voluntarily, consciously, or knowingly and intentionally. *Id.* at 1302, citing *Toti v. The United States (In re Toti)*, 24 F.3d 806, 809 (6th Cir.1994). Defendant Schaeffer testified that he signed the Marital Agreement and conveyed his interest at the insistence of his wife and after discussion with his wife's attorney. He did not deny that these were voluntary and intentional acts, but disputes that he intended to evade or defeat payment of his tax liabilities. The evidence is to the contrary. Defendant voluntarily, knowingly, and intentionally conveyed his primary assets to his wife for no consideration, which left him insolvent and unable to satisfy the IRS tax claim of which he was aware. The court concludes the Defendant's acts were willful.

The court must also determine whether the conveyances were made with the intent to evade or defeat the payment or collection of his 1978 and 1981 income tax liabilities. In the *Dalton* case, the Tenth Circuit recognized that exceptions to discharge are to be strictly construed in favor of the debtor. The *Dalton* debtor argued that attempts to avoid the payment or collection of taxes were not specifically prohibited by § 523(a)(1)(C). The Tenth Circuit stated that "Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished ..." *Id.* 77 F.3d at 1301. The court then opted for an expansive definition of the statutory language: "the modifying phrase 'in any manner' is sufficiently broad to include willful attempts to evade taxes by concealing assets to protect them from execution or attachment". [Citations omitted.] *Id.* at 1301.

The Defendant here argues that he did not attempt to evade or defeat payment of his taxes when he entered into the Marital Agreement and conveyed his real property interest to his wife. He points out that Colorado law permits married parties to enter into valid and enforceable marital agreements without consideration, citing C.R.S. § 14–2–303. Defendant misses the point. The issue is not whether the Marital Agreement is valid and enforceable under Colorado law, but rather whether the defendant used the Marital Agreement and the resulting conveyance of assets to his wife to evade payment or collection of his tax liabilities. Logic dictates the conclusion that he did. By conveying these assets to his wife, the Defendant made himself judgment proof. Following the transfer, he no longer had any assets which could be attached to satisfy the tax liability, nor could his wife's assets be attached because she had no liability following her exoneration as an "innocent spouse" by the IRS. This court is required to consider "the totality of conduct to determine whether or not the debtor willfully attempted to evade or defeat taxes." *Id.* at 1301. In viewing the totality of the Defendant's conduct, I conclude that his actions were calculated to shield his wife and his assets from the IRS tax liability.

Defendant further submits there was no attempt to conceal the conveyance of his property, that the transfers were made at the insistence of his wife in order to stave off a divorce and to permit him to remain in the

household with his children. The Defendant's testimony in this regard is simply not credible. Although Mrs. Schaeffer had filed a petition for dissolution of marriage in 1988, the parties reconciled shortly thereafter, continued to live together until August 1993, and their sixth child was born on October 5, 1989. There is no evidence to support a claim of any kind of duress. His rationale that his wife would have likely been awarded the house in a divorce proceeding is not persuasive. The fact is, she did not receive the property in that fashion. Defendant has given no credible explanation for transferring his property to his wife. The court must conclude that he did so to shield the property from execution or attachment by the IRS, with the intent to defeat or evade the payment of his tax liabilities. It is, therefore

ORDERED that the Defendant, Alan H. Schaeffer's, federal tax liabilities for the 1978 and 1981 tax years are excepted from discharge pursuant to § 523(a)(1)(C). Judgment shall enter in favor of the Plaintiff, the United States of America, on its Complaint.