[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
05/11/99
THOMAS  K. KAHN
CLERK

_____

No. 97-4845

_____

D. C. Docket No. 94-0147-cv-LCN

In re: LEROY CHARLES GRIFFITH,

Debtor.


LEROY CHARLES GRIFFITH,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____
**(May 11, 1999)**

Before ANDERSON, DUBINA and BLACK, Circuit Judges.

ANDERSON, Circuit Judge:

This case raises the issue of whether certain tax debts are dischargeable in bankruptcy despite the debtor's efforts to evade payment of the taxes by transferring assets to his wife. The district court found that such tax debts are not dischargeable. Binding circuit precedent requires us to reverse.

I. FACTS

Plaintiff-appellant Leroy Charles Griffith ("Griffith") has long been the sole owner of several corporations primarily involved in the adult entertainment industry. These corporations included, among others, Gayety Theaters, Inc. ("Gayety"), Ell Gee, Inc., and Paris Follies, Inc. As subchapter S corporations, the income and deductions pass through to the shareholders, so Griffith's personal income tax returns reflect the performance of his corporations. An IRS audit revealed that Griffith had substantially underpaid his taxes for the years 1969, 1970, 1972-1976, and 1978. Griffith petitioned the Tax Court for a reconsideration of the amount owed. In a detailed opinion issued in September of 1988, the Tax Court found that Griffith had indeed underpaid his taxes, but did not impose fraud penalties because the government's evidence with respect to fraud did not satisfy the clear and convincing burden of proof. See Griffith v. Commissioner, 56 T.C.M. (CCH) 220 (1988), modified, 56 T.C.M. (CCH) 1263 (1989). With interest, the amount of taxes owed at the time that Griffith filed for bankruptcy in this case was close to $2,000,000. See In re Griffith, 161 B.R. 727, 730 (Bankr. S.D. Fla. 1993).

Less than a month after the Tax Court issued its decision, on October 10, 1988, NuWave, Inc. was incorporated, with Griffith's long-time live-in girlfriend, Linda, as sole shareholder. On June 8, 1989, Linda and Griffith married, and Griffith signed an antenuptial agreement in which he

2

transferred all of his stock in Gayety, Ell Gee, and Paris Follies to Linda and himself as tenants in the entirety, along with $390,000 in promissory notes. Assets from another corporation that he owned were transferred to NuWave, Inc. The IRS made an assessment against Griffith on September 28, 1989. However, the assets transferred pursuant to the antenuptial agreement were insulated from being levied upon because assets held by tenants in the entirety cannot be levied upon without a judgment against both owners. Additionally, Griffith no longer had any ownership interest in those assets transferred to NuWave, Inc.

On January 15, 1993, Griffith filed a Chapter 7 bankruptcy petition, as well as a complaint to determine the dischargeability of his tax debts. The government argued that the tax debts were nondischargeable under 11 U.S.C. § 523(a)(1)(C), which prohibits discharge of taxes "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." The bankruptcy court agreed. Although there was no evasion with respect to the assessment of the tax, the bankruptcy court, looking to the "badges of fraud," found that Griffith's conduct occurring after the Tax Court issued its decision amounted to a willful attempt to evade or defeat the payment of the tax debt. See id. at 733 - 34. The court specifically rejected Griffith's argument that § 523(a)(1)(C) applies only to conduct constituting evasion of the assessment of a tax; the court held that the phrase "in any manner" was sufficiently broad to include conduct constituting evasion of the payment of a tax. See id. at 732 - 33.

Subsequent to the bankruptcy court's decision, the Eleventh Circuit decided In re Haas, 48 F.3d 1153 (11th Cir. 1994). Haas had filed accurate tax returns, but had not paid the taxes due; instead, he used his income to pay business and personal debts. Upon filing for bankruptcy, he sought discharge of the tax debts, which the government opposed on the basis of § 523(a)(1)(C).

3

Noting the "fresh start" policy underlying the bankruptcy laws, the Haas panel found that a literal reading of the statute, including the broad phrase "in any manner," would conflict with the goals of bankruptcy. See id. at 1156. Thus, the panel looked to provisions of the Internal Revenue Code ("I.R.C.") and found that they referred to "willfully attempting in any manner to evade or defeat any tax or the payment thereof." See id. (quoting 26 U.S.C. § 6531(2)) (emphasis added); see also id. (quoting §§ 6653, 6672, & 7201, which contain the identical language as that emphasized in the above quote). The panel relied on the absence of the phrase "or the payment thereof" from § 523(a)(1)(C) to conclude that the provision precludes discharge when the debtor "willfully attempt[ed] . . . to evade or defeat" the tax at the assessment stage, but does not preclude discharge when there has been such evasion at the payment stage. See id. at 1159. Thus, Haas' debt was dischargeable.

Griffith appealed the bankruptcy court's decision in the instant case to the district court, relying heavily on the intervening decision in Haas. The district court affirmed the bankruptcy court's decision. See In re Griffith, 210 B.R. 216, 220 (S.D. Fla. 1997). In so doing, it distinguished Haas. The district court found that, unlike Haas, Griffith had done more than simply pay other debts before paying his back taxes; Griffith had engaged in a fraudulent transfer of assets in order to prevent collection of his tax debt. See id. at 219. Griffith appealed to this court.[1]

## II. DISCUSSION

---

[1] We reject Griffith's contention that the bankruptcy court abused its discretion in allowing the government to amend to assert specifically its § 523(a)(1)(C) counterclaim.

4

A. <u>The Scope of Haas and its Application to this Case</u>

Our resolution of this case depends on an interpretation of the scope of § 523(a)(1)(C). As several other appellate courts have noted, § 523(a)(1)(C) contains both a mens rea requirement ("willfulness") and a conduct requirement ("attempting to evade or defeat such tax"). <u>See, e.g.</u>, <u>In re Birkenstock</u>, 87 F.3d 947, 951 (7th Cir. 1996).[2] In <u>Haas</u>, the panel focused on the conduct requirement and determined that Haas's conduct did not amount to an attempt to evade or defeat his tax liability. The conduct at issue in <u>Haas</u> was as follows: Haas had not concealed assets or otherwise evinced a motive to evade taxes; because of financial pressures, he had merely paid other debts, leaving the tax debt unpaid notwithstanding his knowledge thereof and ability to pay. In this case, the government argues that "[t]he facts presented in <u>Haas</u> are readily distinguishable from the facts presented here." Brief for the Appellee at 34. Like the district court, the government notes that Haas simply failed to pay his taxes, choosing to pay other debts first, whereas Griffith took numerous actions "pursuant to a plan to defraud the IRS." <u>Id.</u> at 35. The government extracts from the panel's opinion in <u>Haas</u> the statement that "Congress did not intend that a failure to pay taxes, <u>without more</u>, should result in the nondischargeability of a debtor's tax liabilities in bankruptcy." <u>Id.</u> at 36 (quoting <u>Haas</u>, 48 F.3d at 1157). Emphasizing the "without more" qualification, the government contends that "more" was found in this case, so that the conduct requirement is satisfied and nondischargeability of Griffith's tax debt should be upheld.

The distinction suggested by the government and the district court between mere nonpayment and fraudulent acts of concealment to avoid payment is an attractive reading of §

---

[2]     In light of our holding, <u>infra</u>, that the rationale of <u>Haas</u> compels the conclusion that Griffith's activities to avoid payment do not come within the conduct requirement, we decline to address further the mens rea requirement in this opinion.

5

523(a)(1)(C), and one on which the Haas panel could have based its holding. See infra. However, this is not the interpretation of § 523(a)(1)(C) that the Haas panel adopted. The above quote notwithstanding, the Haas panel made clear that, in its view, § 523(a)(1)(C) prohibited discharge only when the actions taken by the debtor affected the assessment of the tax. In support of this reading, the Haas panel relied on the omission of the phrase "or the payment thereof" from § 523(a)(1)(C), in contrast to the following four sections of the I.R.C.: § 6531(2), establishing the statute of limitations period for, inter alia, the crime of "willfully attempting in any manner to evade or defeat any tax or the payment thereof;" § 6653(2), addressing stamp taxes and sanctioning anyone who "willfully attempts in any manner to evade or defeat any such tax or the payment thereof;" §6672(a), creating civil penalties for those who "willfully attempt[] in any manner to evade or defeat any such tax or the payment thereof;" and §7201, imposing felony penalties on "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof."[3] The Haas panel found that the striking similarities between §523(a)(1)(C) and each of these provisions was persuasive evidence that Congress deliberately omitted the language "or the payment thereof" from §523(a)(1)(C). The panel continued:

> We conclude that Congress has shown itself capable of distinguishing between the evasion of a tax and the evasion of payment thereof; its decision to omit the words "or payment thereof" in section 523(a)(1)(C), despite the inclusion of these words in four previously enacted and nearly identical provisions of the I.R.C., must be given effect.

Id. at 1161. Significantly, the Haas court cited the decision of the bankruptcy court in this very case as an example of an erroneous reading of § 523(a)(1)(C). See id. at 1158.

---

[3]     The panel noted that § 523(a)(1)(C) was part of the Bankruptcy Code, not the I.R.C., but still found the I.R.C. instructive "because Congress is presumed to be aware of pertinent, existing law when it passes legislation." Haas, 48 F.3d at 1157.

We conclude that this case is squarely governed by Haas. Pursuant to Haas, §523(a)(1)(C) applies only to conduct constituting evasion of the assessment of a tax; it does not apply to conduct that involves evasion of the payment of a tax debt. Therefore, pursuant to the prior panel rule, we are compelled to reverse the decision of the district court and remand. See United States v. Woodard, 938 F.2d 1255, 1258 (11th Cir. 1991) ("The law in this circuit is emphatic that 'only a decision by this court sitting en banc or the United States Supreme Court can overrule a prior panel decision.'" (quoting United States v. Machado, 804 F.2d 1537, 1543 (11th Cir. 1986))).

B. A Narrower Approach

Although we are bound by the decision in Haas, we are troubled by its application in this case. As noted above, the underlying facts in Haas involved mere nonpayment of the tax, without more. By contrast, in the instant case, Griffith fraudulently transferred assets to his wife to evade the payment of his tax debts. We have significant doubt about whether the Haas panel would have adopted its interpretation of § 523(a)(1)(C), had it foreseen the application of that interpretation in a case like this one.

In Dalton v. IRS, 77 F.3d 1297 (10th Cir. 1996), the Tenth Circuit addressed a case identical to the instant case in all relevant respects. In dicta, the Tenth Circuit indicated its agreement with the result reached in Haas – i.e., that the mere failure to pay a tax, without more, would not rise to the level of tax evasion as required by § 523(a)(1)(C). Thus, the result in Haas, could have been reached upon grounds much narrower than the ground actually adopted by the Haas panel.[4]

---

[4] Such narrower rationale could have been as follows. If the mere nonpayment of a tax, without more, rendered a tax debt nondischargeable, that would effectively make all tax debts nondischargeable. This would be inconsistent with the Bankruptcy Code's purpose of

While acknowledging that the result in <u>Haas</u> was correct, the Tenth Circuit in <u>Dalton</u> expressly rejected the proposition (adopted in <u>Haas</u>) that § 523(a)(1)(C) applies only to conduct constituting evasion of the assessment of a tax and does not apply to conduct constituting evasion of the payment or collection thereof. Like the instant case, <u>Dalton</u> involved only conduct evidencing attempts to evade the payment or collection of taxes. Relying upon the broad language of §523(a)(1)(C) – "willfully attempted in any manner to evade or defeat such tax" – and in particular upon the broad phrase "in any manner," the <u>Dalton</u> court held that §523(a)(1)(C) makes a tax nondischargeable when the debtor attempted to evade a payment or collection of the tax, even though there was no evasion with respect to the assessment thereof. <u>Dalton</u>, 77 F.3d at 1301. The Tenth Circuit also relied upon the purpose of Congress to relieve only "honest" debtors from their tax debts. <u>Id.</u> Finally, although noting the contrary ruling in <u>Haas</u> and in a single bankruptcy court decision, the <u>Dalton</u> court noted that most courts had applied §523(a)(1)(C) to conduct constituting evasion of the payment of taxes, as well as conduct constituting evasion with respect to the assessment thereof. <u>Id.</u> at 1300 - 01.

C. <u>Further Thoughts on the Haas Holding.</u>

allowing a fresh start for honest, but unfortunate, debtors, and would also be inconsistent with §§ 523(a)(1)(A) and 507(a)(8)(A)(i), which together make tax debts nondischargeable only if they become due and owing within three years of bankruptcy. Underlying this narrower rationale is the notion that evasion requires some measure of fraud or something more than merely intentional nonpayment. <u>See</u> <u>Blohm v. Commissioner</u>, 994 F.2d 1542, 1554 (11th Cir. 1993) (referring to liability under § 7201 for attempts to evade or defeat tax as "a criminal tax fraud conviction" and noting that "the elements of criminal tax <u>evasion</u> and of civil tax <u>fraud</u> are identical" (quoting <u>Gray v. Commissioner</u>, 708 F.2d 243, 246 (6th Cir. 1983)) (emphases added)). <u>See generally</u> Harry Graham Balter, <u>Tax Fraud and Evasion</u> ¶ 2.01[1] (1983) (noting that "courts do not hesitate to use the terms fraud and evasion interchangeably and cumulatively").

8

Because we are troubled by the application of the Haas holding to the facts of the instant case, because we doubt that this consequence was argued to the Haas panel, and because of the conflict in the circuits arising from the inconsistency between Haas and Dalton (and the decisions cited therein), we think that the instant case is a candidate for en banc reconsideration. For this reason, we add the further thought that the Haas panel may have overemphasized the importance of the omission of the words "or the payment thereof" from § 523(a)(1)(C). The Haas panel assumed that the language of 11 U.S.C. § 523(a)(1)(C) of the Bankruptcy Code was borrowed from identical – except for the omitted phrase – language in 26 U.S.C. § 7201 and like sections of the Internal Revenue Code. However, our research has uncovered numerous provisions of the I.R.C. that use variations of the same language.[5] If the Haas logic applied to these provisions, they would have no application where there was only a purpose to evade the payment of the tax. Yet there is no

---

[5] See I.R.C. § 552(b)(2) (excluding from definition of "foreign personal holding company" certain corporations that the Secretary is satisfied are "not formed or availed of for the purpose of evading or avoiding United States income taxes which would otherwise be imposed upon its shareholders"); § 5671 (establishing penalties for "whoever evades or attempts to evade any [beer] tax"); § 6111(d)(1)(A) (defining certain tax shelters in terms that include "a significant purpose ... of which is the avoidance or evasion of Federal income tax ...."); § 6501(c)(2) ("In case of a willful attempt in any manner to defeat or evade tax imposed by this title ..., the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."); § 6662(d)(2)(C)(iii) (defining a tax shelter as, inter alia, an organization "a significant purpose of [which] is the avoidance or evasion of Federal income tax"); § 7270 (providing for enhanced fines when any person "fails to comply" with the tax requirements of insurance policies issued by foreign insurers "with intent to evade the tax"); § 7341(a) (holding unenforceable certain financing arrangements under a contract for the sale of property upon which the seller is liable for taxes if the sale was consummated "with intent to avoid such tax, or in fraud of the internal revenue laws"); § 7422(e) (providing, in the context of a civil action for refund, that the taxpayer has the burden of proof on all issues "except as to the issue of whether the taxpayer has been guilty of fraud with intent to evade tax"); § 7454(a) (similarly providing that "[i]n any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary"); and § 7611(i)(4) (excepting from the general rule limiting inquiries into the tax-exempt status of churches "any willful attempt to defeat or evade any tax imposed by this title").

indication in the case law or the regulations that the applicability of these other provisions is limited to the assessment of a tax, to the exclusion of the payment thereof. Congress could have borrowed from any of these provisions, and not from the provisions relied upon by the Haas panel.

These numerous provisions – and others using similar language that we have not cited – argue against placing too much weight on the particular phraseology chosen by Congress. We do not mean to suggest that these provisions affirmatively disprove the reading of the Haas panel. Nor do we suggest that each of these provisions should be interpreted in the same way. We cite these provisions merely to demonstrate that the elimination of the phrase "or the payment thereof," which looks conspicuous when compared to the specific provisions that include that phrase, looks much less so when viewed in light of all of these provisions that differ in relatively minor ways.

This point is reinforced when one considers that the relevant phrase of § 523(a)(1)(C) was not enacted as part of the same statute as the sections including the phrase "or the payment thereof," and is not even part of the I.R.C., but is rather a provision of the Bankruptcy Code. The Haas panel acknowledged this point, but relied on the presumption that "Congress is ... aware of pertinent, existing law when it passes legislation." See id. (citations omitted). We suggest that this presumption is relatively weak, however, when the background law is the entire I.R.C., which encompasses fifteen volumes of the United States Code Annotated, and which includes provisions that contain language referring both to the evasion of tax and to the payment thereof, but which also includes numerous provisions which refer only to the former. In short, we have some doubt about attaching too much significance to the lack of a four-word phrase in § 523(a)(1)(C).

III.  CONCLUSION

10

For the foregoing reasons, we reverse the judgment of the district court on the basis of the holding in <u>Haas</u> and remand for further proceedings consistent with this opinion. However, we suggest that this case might warrant en banc reconsideration.

REVERSED and REMANDED.